1807.

Hall
vs
Gittings

*States,*" passed the 24th of September 1789; but the su-
preme court, considering it not to be such a case, dismiss-
ed the writ of error.   *5 Cranch,* 344.

DECEMBER.

HALL vs. GITTINGS *Junr's.* Lessee.

GITTINGS *Junr's.* Lessee vs. HALL.

No adversary possession of land can avail against the state.

Lands which escheated to the Lord Proprietary, were by the acts of October 1780, ch. 45, and ch. 49, confiscated to and vested in the state, without office found, or an actual entry.

An adversary possession commencing against the Proprietary, the Proprietary ceased to operate against the state after the act of confiscation.

The act of October 1780, ch 49, vested the seizin

CROSS APPEALS from the General Court.   This was an
action of *ejectment* for a tract of land called *Friendship
Compleated,* lying in *Baltimore* county.   The defendant
(*Hall*) in the court below, took defence on warrant for a
tract of land called *Tolly's Purchase,* granted under an
escheat warrant on *Cullen's Lot,* and part of *Cullen's Ad-
dition.*

1. At the trial at May term 1802, the defendant offered
to prove, that *George Holland,* the patentee of *Holland's
Park,* died before the year 1760, intestate, and without is-
sue, not having conveyed that land, and leaving no heirs
capable of inheriting.   That in the year 1774, *Walter Tol-*

and possession of all lands liable to confiscation in the commissioners, on behalf of the state, and
divested the possession of all other persons.

If two persons are in possession of land, the one by right, and the other by wrong, it is the posses-
sion of him who is in by right.

If land liable to escheat is included in a survey and grant under an escheat warrant on another tract
of land, such grant will operate to pass a good title to the land so included, if there has been posses-
sion and payment of quit rents for more than 20 years before the act of confiscation.

Land not liable to escheat at the time it was included in a grant on a survey made in virtue of an
escheat warrant on another tract, but which afterwards became escheat, will not pass under such
grant, and the state is not estopped from granting it to any other person.

An escheat grant relates to, and operates to pass the whole of the original tract escheated.

If there are two descriptions of the land conveyed, the one by name, and the other by metes and
bounds, &c. the grant will operate to pass the land according to that description which is most bene-
ficial to the grantee

If the testimony of a witness is intended to be objected to because of *his holding adjoining lands,*
&c. his interest must be located on the plots.

The declarations of a former holder of the adjoining lands, as to the bounds of the land in dispute,
admitted in evidence, it not appearing by the plots that he was interested in establishing the truth of
the facts related by him.

Whether or not a will was *legally executed* and proved, are matters of fact for the jury; and where
the will was made in 1683, they may and ought, from the length of time elapsed, to presume that it
had been duly executed and proved.

The jury were directed on certain *evidence of title and descent,* that if true, then land which had
been granted as escheat land was not escheatable, altho for upwards of 100 years no person ever
claimed the land under the original grantee.

In ejectment the plaintiff must recover on the strength of his own title.   The defendant may pre-
vent his recovery, by showing a title in himself, or a clear subsisting title in a stranger.

*Possession* is presumptive evidence of right, and the defendant cannot be deprived of his possession
by any person but the rightful owner of the land, i. e. he who hath the *jus possessionis.*

A *clear subsisting title,* outstanding in another, means such a title as the stranger could recover on
in ejectment against either of the contending parties.

Land is not escheatable as long as there are heirs of the original tenant or grantee.

Escheat is that possibility of interest which reverts to or devolves on the Lord upon the failure of
heirs of the original grantee, and he cannot grant the land again until that event happens; and if he
does his grant will pass nothing.

An escheat grant is *prima facie* evidence of title; but being only a presumption of right in the Pro-
prietary, it only exists until the contrary is proved.

Nothing but 20 years adversary possession can defeat a title acquired under a legal grant.

The jury were directed, that if they believed certain facts, then the presumption of law was, that
G. H, for whom the land in dispute was surveyed on the 14th of October 1683, and granted to him
the 10th of August 1684, was seized thereof at the time of his will dated the 19th of February 1683,
and his death in 1685, and that the land passed to his devisee under the residuary clause in his will.

ly entered on and became possessed *pro ut lex postulat,* of the lands located on the plots in this cause, surrounding red M, N and P, claiming the same as his own, and in virtue of his patent for *Tolly's Purchase.* That the land included in the black lines on the plots shaded yellow, surrounding red M, and the land in the blue shaded lines surrounding red N, and the land in the yellow lines surrounding red P, were in the year 1774 actually enclosed by *Tolly,* and that he died in the year 1783, in the actual seizin and possession, (so far as he could be seized and possessed thereof against the state,) of the land so enclosed, and devised the same to the wife of the defendant. That the defendant, in virtue of his marriage and the devise, entered upon the said lands in the year 1783, (so far as he could be seized and possessed against the state,) claiming the same, and hath ever since remained in such seizin and possession thereof. That the whole of the three pieces of land has been under actual enclosure of fences from the year 1774 to this period, by *Tolly* in his life-time, claiming the same, and from the time of his death by the defendant, claiming the same. That *Tolly* in his life-time, and the defendant since his title accrued under the devise, and his entry, have paid quit rents to the Proprietary in his time, and taxes and assessment to the state, since the year 1780, for *Tolly's Purchase;* and that no actual entry ever was made by the state, or any person on behalf of the state, on any of the lands herein before described, except the surveyor, who on the 30th day of March 1796, entered on the same to make the survey, on which the lessor of the plaintiff afterwards obtained a patent including the said lands, for the recovery of which this suit is instituted. The plaintiff then prayed the opinion of the court, and their direction to the jury, that they being satisfied as to the true location of *Holland's Park,* the same being land *escheated* to the Proprietor, and by the act of confiscation vested in the state, no adversary possession on the part of the defendant can avail against the state, *so long as the title thereof remained in the state.*

*Martin,* (Attorney-General,) and *Mason,* for the plaintiff, referred to the acts of assembly of October 1780, *ch.* 45, and *ch.* 49.

*Key, Hollingsworth* and *Harper*, for the defendants, cited *Kelly's Lessee vs. Greenfield & Sothoron*, 2 Harr. & M'Hen. 121. *Russell's Lessee vs. Baker*, 1 Harr. & Johns. 71. *Ringgold's Lessee vs. Malott*, 1 Harr. & Johns. 299. 2 Blk. Com. 75, 257. *Murray & Sansom vs. Ridley's Adm'x.* 3 Harr. & M'Hen. 171. The acts of assembly, October 1780, ch. 51, s. 5; and Nov. 1781, ch. 20, s. 8, 17. *Burgess vs. Wheat*, 1 Wm. Blk. Rep. 174.

CHASE, Ch. J. (a). The court are of opinion, that there is no adversary possession on the part of the defendant which can defeat the right derived from the state. Under the act of October 1780, ch. 49, the state became actually possessed of the land; and that act dispenses with the requisites necessary in the case of the crown to avoid a possession adversary to the right of the crown, to wit, an office found, or an actual entry. By an office found in *England*, the crown becomes actually seized and possessed of any escheat land in question. The state then had the right to pass the act of assembly; and by that act, the state by its commissioners, was in as full possession of the land as if there had been an office found, or actual entry by the commissioners, and ouster of the defendant, or those under whom he claims.

This case has been argued upon the principle of the land's being held under the idea of its being part of *Tolly's Purchase*. The court consider it as distinct from *Tolly's Purchase*, and as having no connexion with the question. It has also been contended by the defendant's counsel on the principles decided in former cases. The court do not consider this case as affected by former decisions. In *Kelly's Lessee vs. Greenfield & Sothoron*, and *Russell's Lessee vs. Baker*, the lands had been granted by common warrants, and afterwards taken by escheat warrants, and there the grantees under the common warrants, had had the adversary possession for the full length of time, to wit, 20 years. But in this case the state, by the act of 1780, having vested complete possession in its commissioners, the adversary possession, (as stated in the case, commencing at farthest in 1774,) could only have continued till the passing of that act. If there had been a subsequent entry and possession of the land by the defendant, or those under whom

(a) *Buwell* and *Bone, J.* concurred.

1807.

Hall
vs
Gittings

he claims, there must then have been a continuance for 20 years of that adversary possession to defeat the right of the state's grantee.

The opinion of the court, as contained in the bill of exceptions which was taken at the trial, is as follows, viz. "The court are of opinion, and so direct the jury, that in this case the act of assembly which passed in October 1780, *ch.* 49, vested the actual seizin and possession of the said land in the commissioners appointed to preserve confiscated *British* property, as fully and amply as if the said commissioners, as the agent or trustees of the state, had made a formal entry on the same. That the commissioners were in possession of the said land in virtue and by operation of that act, from the time of passing the same; and although the defendant, or those under whom he claims, continued in the actual possession of the said land, it was the possession of the commissioners on behalf of the state; for where two persons are in possession, the one by right, and the other by wrong, it is the possession of him who is in by right.

"The court are also of opinion, that the possession of the defendant, or those under whom he claims, was divested by the said act of assembly, and that the act of limitations ceased to have operation, or to run from that time, and that he has no right to the said land in virtue of the said possession. That the said possession not being derived from the Proprietary, but taken and held in opposition to his title, the defendant cannot have any equitable interest in the land, or claim to the same upon the state, as standing in the place of the Proprietary." The defendant excepted.

2. The plaintiff, to make title to the land called *Friendship Completed,* in the declaration of ejectment mentioned, read in evidence the grant thereof for 89 and one quarter acres and 20 perches, surveyed on the 30th of March 1796, for, and granted on the 14th of March 1798 to, the lessor of the plaintiff, in virtue of a special warrant of escheat issued on the 29th of April 1795, to resurvey and affect a tract of land called *Holland's Park,* granted to *George Holland.* He also read in evidence the grant of *Holland's Park,* surveyed the 14th of October 1683, and

Where land liable to escheat was included in a survey and granted under an escheat warrant on another tract, such grant operated to pass a good title to the land so included, if there had been possession and payment of quit rents for more than 20 years before the act of confiscation. But if the land was not escheatable at the time the escheat grant was obtained, the state was not estopped from granting it to any other person. An escheat grant relates to the original grant.

granted the 10th of August 1684, to *George Holland*, for 150 acres. The defendant then, in order to make title to that part of *Tolly's Purchase* surveyed the 15th of December 1757, for and granted to, *Walter Tolly*, on the 14th of August 1759, read in evidence the grant thereof, being in virtue of a *special warrant of escheat* upon *Cullen's Lot*, granted to *Thomas Greenwin* for 300 acres, and *Cullen's Addition*, granted also to *Greenwin*, for 500 acres. He then read in evidence the will of *Tolly*, the patentee, dated the 26th of July 1781, by which he devised *Tolly's Purchase* to the wife of the defendant, who is still living; and he proved that *Tolly* died, possessed thereof, in the year 1783. He then offered evidence to prove, that from the time of the grant for *Tolly's Purchase*, the quit rents on that tract had been paid by *Tolly*, to the agents of the Lord Proprietary, until the year 1776, and that the other taxes and county assessments imposed on lands had also been paid by *Tolly*, and those claiming under him, for *Tolly's Purchase*. He then offered evidence to prove, that from the time of obtaining the grant for *Tolly's Purchase* to the present time, *Tolly*, and those claiming under him, have been in the possession and occupation of that land, claiming title to the same. He then offered evidence to prove, that his location of *Tolly's Purchase*, and for which he has taken defence, and which is described by the plot and the table of courses No. 15, is the true original location of that land, and that part of the plaintiff's pretensions for *Friendship Compleated*, interferes with, and runs foul of *Tolly's Purchase*. He then prayed the opinion of the court, and their direction to the jury, that admitting *Holland's Park*, mentioned in the grant of *Friendship Compleated*, was liable to escheat at the time of the survey and grant to *Tolly's Purchase*, and part thereof was included in the grant of *Tolly's Purchase*, then the subsequent grant of the escheat on *Holland's Park*, called *Friendship Compleated*, to the lessor of the plaintiff, could not operate to give him title for any part of the land which was included in the escheat grant to *Tolly*.

*Harper* and *Johnson*, for the defendant, cited 4 *Bac. Ab.* tit. *Estoppel*, 107. *Co. Litt.* 47, 227, a. 352, 58. 4 *Co.* 53.

*Martin*, (Attorney-General,) and *Mason*, for the plaintiff, cited *Coke Litt.* 3. 4 *Bac. Abr.* tit. *Estoppel*, 107. The

*Proprietary vs. Jennings et al.* 1 *Harr. & M'Hen.* 92. *The State vs. Reed,* 4 *Harr. & M'Hen.* 6.

CHASE, Ch. J. The court are of opinion, and so direct the jury, that if *Holland's Park* was escheatable at the time of the grant of *Tolly's Purchase,* and possession and payment of quit rents followed for more than twenty years before the act of confiscation, then the grant for *Tolly's Purchase* operates to convey a good title to all the land contained within the lines of the grant. But if *Holland's Park* was not escheatable at the time the grant of *Tolly's Purchase* was obtained, that in such case no part of *Holland's Park,* which is included within the lines of *Tolly's Purchase,* passed to *Walter Tolly* under the grant, and the state was not estopped from granting *Friendship Compleated* to the lessor of the plaintiff.

The chief judge observed, that the court considered this decision conformable to that in *Kelly's Lessee vs. Greenfield & Sothoron.* He cited *Blackston vs. Johnson,* in the general court for the *Eastern* shore, where he said it was decided, that an escheat grant related to the original grant. The defendant excepted.

3. The defendant then, to support his location of *Tolly's Purchase* on the plots, offered in evidence the certificate and grant of that land, surveyed (in virtue of a special warrant of escheat,) on the 15th of December 1757, for, and granted on the 14th of August 1759, to *Walter Tolly.* In which it was stated, that there "was laid out for *Walter Tolly* the tracts of land called *Cullen's Lot,* and such part of the tract of land called *Cullen's Addition,* as is escheat, according to their ancient metes and bounds, as showed. Beginning for *Cullen's Lot* at a bounded red oak, being the second boundary of the land called *Trueman's Acquaintance,* and running thence N W 96 perches, N E 500 perches, S E 96 perches, and then with a straight line to the beginning, containing and laid out for 300 acres more or less. Beginning for the part of *Cullen's Addition,* supposed to be escheated, at the end of the N E 500 perches line of the land called *Cullen's Lot,* and running thence N E 142 perches, S E 284 perches, S W 142 perches, and then with a straight line to the place of beginning, containing and laid out for 252 acres more or less." *Which being reduced into one entire tract*—"Beginning at a bounded red oak, it

*An escheat grant will pass all the land comprehended within the true location of the tract of land escheated. If there are two descriptions of the land conveyed, one by name, and the other by metes and bounds, &c. the grant will operate to pass the land according to that description which is most beneficial to the grantee*

1807.

Hall
vs
Gittings

being the original beginning tree of *Cullen's Lot*, and the second boundary of *Trueman's Acquaintance*, and running thence N W 96 perches, N E 642 perches, S E 284 perches, S W 142 perches, N W 188 perches, and then with a straight line to the beginning, containing and laid out for 552 acres, more or less." He also offered in evidence the certificate of survey of a tract of land called *Double Purchase*, surveyed on the 29th of January 1785, for, and granted the 11th of October 1796 to, *Aquila Hall*, the defendant. In which it is stated, that there "was laid out for the said *Hall*, in virtue of a special warrant dated 22d of December 1784, by directions of the commissioners for confiscated *British* property, 166 acres of land, lying within the reserve of *Gunpowder* Manor, a tract or parcel of land adjoining *Gunpowder* Manor, and adjoining a tract or parcel of land called *Tolly's Purchase*, beginning at a bounded stone set up by the said *Hall*, at the end of 784 perches, on the first line of *Gunpowder* Manor, and running thence with and bounding on the manor reverse of the same S 39° 52' W 784 perches, to a stone marked W T, being the beginning of the manor, and a boundary of *Tolly's Purchase*, and the second boundary of *Cullen's Lot*, thence bounding on *Tolly's Purchase* N E 784 perches, and thence by a straight line to the beginning, containing and laid out for 166 acres more or less." He also offered in evidence that *Tolly*, the patentee of *Tolly's Purchase*, died in March 1783, seized of the lands contained within the metes and bounds of that tract, according to the said location; and by his will devised that tract to the wife of the defendant, who hath since the death of *Tolly*, continued in the actual seizin and possession thereof, until this time. He also offered in evidence that he purchased of this state some time in the year 1785, the tract of land called *Double Purchase*, as located on the plots, as part of *Gunpowder* Manor, which manor is also located on the plots, and obtained a grant therefor from the state on the 11th of October 1796. He also offered in evidence that *Tolly*, during his life, and before and until the *American* revolution, paid the quit rents due upon *Tolly's Purchase* to the agents of the Proprietary down to the year 1776; and after that time he, the defendant, paid the taxes due thereon under the laws of this state. The plaintiff then offered in evidence a certificate of survey of *Cullen's Lot*,

(surveyed for *James Cullen* on the 17th of June 1683, under a warrant dated the 20th of April 1683,) "lying in *Baltimore* county, at the head of *Gunpowder* river, on the N side of the S branch of the said river, beginning at a bounded red oak, the bounded tree of the land called *Trueman's Acquaintance*, and running from the said oak N W for breadth 96 perches, to another bounded red oak, then with a line drawn N E for the length of 500 perches to a bounded poplar, then running S E 96 perches to a bounded red oak, from thence with a straight line drawn S W to the first bounded tree, containing 300 acres." Also the certificate of survey of *Cullen's Addition*, (surveyed for *James Cullen* the 25th of September 1683, under a warrant dated 30th of July, 1683,) "lying in *Baltimore* county, upon the head of a river called *Gunpowder* river, beginning at the end of the N E line of the land called *Cullen's Lot*, and running from the end of the said N E line N E 284 perches, from thence with a line drawn S E 284 perches to a marked poplar, then running S W 284 perches, from thence running by a direct line to the first bounded tree, containing 500 acres more or less." He also offered in evidence that *Cullen's Lot, Cullen's Addition* and *Tolly's Purchase*, are truly located on the plots by him the plaintiff. The defendant then prayed the opinion of the court, and their direction to the jury, that no boundary being called for at the end of the first line of *Tolly's Purchase*, and the second line not calling to bind on or run with any other land, the said first line must stop at the number of perches called for, and cannot be extended further.

CHASE, Ch. J. The court are of opinion, that the true and legal exposition of the grant of *Tolly's Purchase* was to convey all the land comprehended within the true location of *Cullen's Lot*, and that part of *Cullen's Addition* which was escheated. That where there are two descriptions of the land intended to be conveyed, the one by name, and the other by metes and bounds, or courses and distances, the grant will operate to pass the land according to that description which is most beneficial to the grantee.

The chief judge observed, that if A. is possessed of two tracts of land, *Black Acre* and *White Acre*, and grants *White Acre*, the youngest tract, by metes and bounds, which metes and bounds interfere with the lines of *Black*

1807.

Hall
vs
Gittings

*Acre*, then the grantee takes by metes and bounds; for the deed must be taken most favourable for the grantee. This question, he said, was decided in the late provincial court, and affirmed in the present court of appeals *(a)*. The defendant excepted.

If the testimony of a witness is intended to be objected to because of his holding adjoining lands, his interest must be located on the plots.

4. The plaintiff, to establish the location of *Thompson's Choice*, as located by him on the plots, gave in evidence a plot of the lands called *Thompson's Choice*, *Cullen's Lot*, *Cullen's Addition*, *Hill's Forest*, *Tasker's Camp*, *Holland's Park*, (the last tract granted to the defendant,) and *Jamaica*, which plot was made by a certain *Darby Ensor*, a witness sworn in this cause; and the plaintiff offered to prove by *Ensor*, that the said plot was made by him from runnings directed by the defendant, and made by him, *Ensor*, as deputy surveyor of *Baltimore* county, in virtue of a warrant of resurvey issued from this court in an action of ejectment brought therein by the lessee of the present defendant against a certain *Thomas Gittings*. And the plaintiff offered also to prove, by the testimony of *James Gittings*, of *Thomas*, that the place where *Ensor* run from as the beginning of *Thompson's Choice*, in the said runnings from which the said plot so produced was made, was the same place as located on the plots in this cause at black H. But the defendant objected to *James Gittings*, of *Thomas*, being sworn in chief, and that he was not a competent witness to prove that the place where the defendant had directed *Ensor* to run from, in the runnings from which the said plot was made, was the same place which is located by the plaintiff on the plots at H; and offered to prove to the court, that *James Gittings*, of *Thomas*, was the owner of a part of *Thompson's Choice*; and produced the certificates of the surveys of *Hill's Forest*, and *Holland's Park*, granted to *George Holland*. The former of those tracts was surveyed on the 4th of October 1684, and the latter on the 14th of October 1683, and they are both stated as lying in *Baltimore* county, in the woods, above the head of a river called *Gunpowder* river. The former tract began at a bounded red oak standing at the end of the N line of *Thompson's Choice*, and the latter began at a bounded tree standing at the end of *Hill's Forest*.

*(a) Hawkins vs. Hanson,* 1 *Harr. & M'Hen.* 523.

CHASE, Ch. J. The court are of opinion, that *James Gittings*, of *Thomas*, be admitted as a witness to prove the fact stated by the plaintiff. The Chief Judge cited *Hawkins vs. Beanes & Middleton*, 2 *Harr. & M'Hen.* 119. *Chapline vs. Keedy*, 3 *Harr. & M'Hen.* 578, and *Gittings vs. Hall*, 1 *Harr. & Johns.* 23, to show that it had been decided, that if the testimony of a witness, who is interested, is intended to be objected to, the land, in which the witness is alleged to be interested, must be located on the plots. The defendant excepted.

1807.

Hall
vs
Gittings

5. The defendant produced a witness, who deposed, that 18 years ago he lived with *Charles Ridgely*, who had then purchased part of *Trueman's Acquaintance*, a tract of land located on the plots. That *Ridgely* told him that an agreement had been before entered into between *Thomas Gittings*, the owner of *Thompson's Choice*, and *James Greenfield*, the owner of part of *Trueman's Acquaintance*, (which part he had sold to *Ridgely*;) that the place designated on the plots as the end of the first line of *Thompson's Choice*, according to one of its locations as made on the plots, should be fixed as one of the boundaries of that part of *Trueman's Acquaintance*, which *Greenfield* had held and sold to *Ridgely*. The plaintiff then prayed the court for their opinion and direction to the jury, that the declarations of *Ridgely*, (who is dead,) so given in by the witness above stated, was incompetent and inadmissible, he, *Ridgely*, being interested in establishing the truth of the facts by him related to the witness.

*The declarations of a former holder of the adjoining lands, as to the bounds of the land in dispute, admitted in evidence, it not appearing by the plots that he was interested in establishing the facts related by him*

CHASE, Ch. J. The court are of opinion, that the declarations of *Ridgely* are competent and admissible evidence to the jury, it not appearing to the court, by the plots, that he was interested in establishing the truth of the facts related by him to the witness. The plaintiff excepted.

6. The defendant, in order to show that the land claimed by the plaintiff was not escheatable for the want of the heirs of *George Holland*, the patentee, offered to read in evidence an exemplification of the will of *Holland*, taken from the records of the late prerogative office, dated the 19th of February 1633, whereby, amongst other things, he devised as follows, viz. "And all the rest of my lands,

*Whether or not a will made in 1633 was legally executed & proved, are matters of fact for the jury; and they ought, from the length of time which has elapsed, to presume that it had been duly executed and proved*

1807.

Hall
vs
Gittings

goods and chattels, I give and bequeath unto *John Larkin*, of *Ann-Arundel* county aforesaid, innholder, and to his heirs and assigns for ever." The will was signed, sealed, and attested thus:

"*George Holland*, (L S.)

"Signed, sealed and delivered,
in the presence of
· *Wm. Lathorp*,
*Ann* ⋈ *Tovey*,
*Diana D. Parkes*."

And thus endorsed: "June the 22d, 1685, came before me *William Lathrup* and *Anne Tovey*, alias *Joce*, the said *Lathrupe* took his corporal oath, that the within was signed, sealed and delivered, as the act and deed of the said *George Holland*. *Ann Tovey*, alias *Joce*, took her corporal oath that she did believe that the within signed was her mark—the said *Diana*, *mortu est*.

"*Jurat coram me*     *James Ringold*."

The plaintiff objected to the same being offered in evidence, because it did not appear that the will, if executed at all, was attested by the witnesses in the presence of the testator; and because it was not the original will, and did not appear to have been proved, so as to authorise the same to be recorded.

CHASE, Ch. J. The court are of opinion, that the above circumstances are matters of fact to be determined by the jury; and that they may and ought, from the length of time which has elapsed since the making of the will, to presume that they were complied with. The plaintiff · excepted.

On certain facts of title and descent, the jury were directed, that if they found them to be true, then the land, which had been granted as escheat land, was not escheatable; although the land had not been claimed under the original grantee for upwards of 100 years,

7. The plaintiff then offered in evidence an escheat warrant obtained by *Walter Tolly* on the 6th of September 1782, on *Holland's Park*; that *Tolly* died a few months after the date of that warrant, and that the defendant, who intermarried with the daughter of *Tolly*, obtained an escheat warrant on the 22d of August 1783, on the same

In ejectment the plaintiff must recover on the strength of his own title; which recovery the defendant may prevent, by showing a title in himself, or a clear subsisting title in a stranger.

Possession is presumptive evidence of right, and the defendant cannot be deprived of his possession by any person but the rightful owner of the land—he who hath the *jus possessionis*.

A clear subsisting title, outstanding in another, means such a title as the stranger could recover on in ejectment against either of the contending parties,

Land is not escheatable as long as there are heirs of the original grantee, and until the failure of his heirs, the land cannot be again granted; and if it is, it passes nothing.

An escheat grant is *prima facie* evidence of title.

Nothing but 20 years adversary possession can defeat a title acquired under a legal grant.

land, for want of heirs of *George Holland*, the grantee; that he returned a certificate of survey on the 1st of July 1784, and obtained a patent therefor, by the name also of *Holland's Park*, on the 13th of May 1785; and that the land, so granted to the defendant, is truly located by the plaintiff on the plots. The plaintiff then offered in evidence, that *John Larkin*, the devisee in the will of *George Holland*, died intestate in the month of February 1702, leaving *Thomas Larkin*, the other devisee in the said will, his heir at law, who married about the 2d of September 1697; and gave in evidence the will of *T Larkin*, dated the 10th of April 1731, in which *Holland's Park* is not mentioned; but there is a recital of a mortgage of sundry tracts of land execut- ed by the testator to the heirs of *Amos Garrett*, more than sufficient to pay the debt for which they were mortgaged, and he desired that they might be sold, &c. He devised other lands to his daughter *Elizabeth*. That *T. Larkin* died in May 1731, leaving his daughter *Eliza- beth*, the devisee in the will mentioned, his heir at law. He also offered in evidence the will of *E. Larkin*, dated the 25th of January 1735, in which no mention is made of *Holland's Park*, nor is there any residuary clause; and that she died unmarried, on the 4th of February 1735. He also offered in evidence the deed of mortgage referred to in the will of *T. Larkin*, in which mortgage *Holland's Park* is not mentioned. He also offered evidence that *Zachariah Maccubbin* intermarried with *Susanna*, his wife, on the 20th of July 1704, and died about the month of December 1756, leaving *Nicholas Maccubbin* his son and heir, and that *N. Maccubbin* died about the month of March 1787, aged about 85 years, leaving *Nicholas Car- roll (a)*, of the city of *Annapolis*, his heir. He also gave in evidence, that *N. Maccubbin* was a sensible, intelligent man, possessed of a large fortune, and very careful and attentive to his interest. He further offered in evidence, that from the time of the grant to *Holland*, until the pre- sent time, no person has been known to have ever actually possessed or claimed *Holland's Park*, claiming it as such, except the lessor of the plaintiff, and the defendant, un- der their escheat grants aforesaid. And further, that no person of the name of *Larkin* or *Maccubbin*, or of any other name, has been known to set up a title to, or to claim

(a) Name changed from *Maccubbin* by act of assembly.

1807.

Hall
vs
Gittings

the said land, except under the escheat grants aforesaid; Also, that *Tolly* lived adjoining the said land during the whole of his life, and was an old man at the time of his death; and also that the defendant is an attorney of great legal information, and has been in the practice of the law for near or quite thirty years. The defendant then read in evidence the certificate and grant for *Holland's Park*, granted to *George Holland;* and gave in evidence that *Holland* afterwards died, having devised the land in fee to *John Larkin;* that *J. Larkin* died, and left issue two children, *Thomas,* his heir at law, and *Hester;* that *T. Larkin* afterwards died, leaving issue an only child, a daughter, named *Elizabeth,* which *Elizabeth* died without issue. That *Hester,* the sister of *T. Larkin,* and aunt to *Elizabeth,* intermarried with a certain *Nicholas Nicholson,* by whom she had issue *Susanna,* her only child and heir at law. That *Susanna,* after the death of *Hester,* intermarried with *Zachariah Maccubbin,* by whom she had issue *N. Maccubbin,* her eldest son and heir at law; that *N. Maccubbin,* after his mother's death, died, leaving issue a son named *N. Carroll,* his heir at law, now in full life, living in the city of *Annapolis.* He also offered evidence to prove that *Holland,* the patentee, *J. Larkin,* his devisee, and the before mentioned *T. Larkin, E. Larkin, H. Nicholson, S. Maccubbin, N. Maccubbin,* and *N. Carroll,* his son, have severally, at all times during their respective lives, lived and resided in *Anne-Arundel* county in this state; that the land called *Holland's Park* was originally located in *Baltimore* county, and that no person or persons ever built on, improved or cultivated the said land, or any part thereof, before the defendant in this cause in 1775, and the lessor of the plaintiff in 1795, except part thereof which had been occupied by a certain *James Gittings,* and that the residue of the land lay waste and unimproved. He further offered in evidence the original *debt books* of *Baltimore* county, and entries therein of the agents of the Proprietary, on one of which, viz. in 1769, is an entry in these words: "*Gideon Linthecum* Dr. To *Holland's Park,* 150 acres, 6s." and opposite thereto the following entry, viz. "Can't find any such person or land." And an entry on the *rent roll* in the land office, made about the year 1772, in these words, viz. "150. *Holland's Park,* surv'd. 14th October, 1683, for *George Holland,* above the head of *Gunpowder* river.

Poss. 150. 6s. *Gideon Linthecomb.* The bounds of this land being lost, the land cannot be found; nor is there any such person in being as *Gideon Linthecomb.*" He also offered evidence to prove, that the tract of land in the said entries mentioned, was the same land which was surveyed for *Holland*, and patented to him by the grant herein before referred to; and that it is the land located by the defendant and the plaintiff on the plots, and that it is truly located by the defendant. He then prayed the direction of the court to the jury, that if the facts in the above statement are true, that then the legal title to *Holland's Park* is in *N. Carroll*, the heir at law of *N. Maccubbin;* that the land was not liable to escheat, and that the lessor of the plaintiff is not entitled to recover the said land, in the declaration mentioned, under his escheat grant in 1798.

CHASE, Ch. J. The court are of opinion, and so direct the jury, that if they find the facts stated by the defendant to be true, that the legal title to *Holland's Park* is in *Nicholas Carroll*, the heir at law of *Nicholas Maccubbin*, and that the said land not being escheatable, the plaintiff is not entitled to recover the said land, in his declaration of ejectment mentioned, under the escheat grant to the lessor of the plaintiff in 1798.

In ejectment the plaintiff must recover on the strength of his own title. The defendant may prevent his recovery by showing a title in himself, or by showing a clear subsisting title in a stranger.

Possession is presumptive evidence of right, and the defendant cannot be deprived of his possession by any person but the rightful owner of the land, *i. e.* he who hath the *jus possessionis.*

A clear subsisting title outstanding in another, means such a title as the stranger could recover on in ejectment against either of the contending parties.

Land is not escheatable as long as there are heirs of the original tenant or grantee.

Escheat is that possibility of interest which reverts to, or devolves on the lord, upon the failure of heirs of the original grantee; and he cannot grant the land again until that event happens; and if he does, his grant will pass nothing, and cannot impair any right or interest acquired under his original grant.

1807.

Hall
vs
Gittings

The escheat grant is *prima facie* evidence of title; but being only a presumption of right in the Proprietary, it can only exist until the contrary is proved; and if the jury find the facts stated by the defendant, there is evidence of a clear subsisting title in the heirs of *George Holland*, under the grant to him. *Holland's Park* having been legally granted to *George Holland*, nothing can defeat his title, and the title of his heirs, to the said land under his grant, but twenty years adversary possession.

The court are of opinion, that if the jury find the facts stated, a title has been legally deduced from *George Holland*, the patentee of *Holland's Park*, to *Nicholas Carroll*, and that the right to *Holland's Park* now subsists in him. The plaintiff excepted.

The jury were directed, that if they believed certain facts, then the presumption of law was, that G. H, for whom the land in dispute was surveyed on the 14th of October 1683, and granted to him on the 10th of August 1684, was seized thereof at the time of his will dated the 19th of February 1683, and his death in 1685.

8. The plaintiff also offered in evidence, an entry on the old *rent roll* in the land office, made about the year 1710, in these words, viz. "150 acres of *Holland's Park*, surv'd 14th October .1683, for *George Holland*, above the head of *Gunpowder* river, at a bounded tree at the end of a parcel of land called *Hill's Forest*, and now in possession of *John Ford* of *A. A.* county." Also an extract from the land office of the following tracts of land having been patented to *George Holland*, viz. *Collet's Neglect, Holland, Denton, Holland's Delight, Holland* and *Holland's Advent*. Also a record of a suit brought by *N. Maccubbin's* Lessee vs. *Medford*, about the year 1766, for establishing the bounds of a tract of land lying in *Kent* county, devised to *Maccubbin* by Col. *Richard Bennett*, and which suit was tried at the assizes held in *Queen-Anne's* county. The defendant then prayed the court to direct the jury, that if they believe the facts to be true as stated by him, that then the presumption of law is, that *George Holland* was seized of *Holland's Park* at the time of his will and death, and the same land passed to *Larkin*, his devisee, and no presumption from the facts stated on the part of the plaintiff can arise, that *Holland* was not seized of the said land at the time of his will and death.

THE COURT directed the jury accordingly. The plaintiff excepted.

*Verdict*, part for the plaintiff, and part for the defendant, and judgment thereon for the plaintiff. Both parties appealed to the late court of appeals, and at *November* term

1805, the points arising on the *bills of exceptions*, (the *four* first taken on the part of the defendant, and the other *four* on the part of the plaintiff,) were argued in that court, on the cross appeals, by

*Pinkney, Key, Shaaff* and *Harper*, for *Hall*, and by

*Martin*, (Attorney-General,) for *Gittings's Lessee*.

The then Court of Appeals not having given judgment when the legislature passed the act of 1805, *ch*. 16, abolishing that court, these appeals were, by the act of the same session, *ch*. 65, transferred to the present Court of Appeals, and were argued at June term 1806, before TILGHMAN, BUCHANAN, NICHOLSON and GANTT, J. by

*Harper* and *Johnson*, for *Hall*, and by

*Martin*, for *Gittings's Lessee*.

On the part of *Hall*, it was contended by his counsel in the former and present arguments on the *first* bill of exceptions, 1. That the Lord Proprietary was entitled to the whole of the land in controversy, either by escheat or as vacant land, in case it was not included in *Tolly's Purchase*. 2. That the Proprietary was liable to the operation of the act of limitations, and of adversary possession. 3. That he was therefore out of possession, and had merely a right of entry when the act of confiscation divested him of his rights, and transferred them to the state. 4. That the state acquired merely a right of entry, and had not a complete title or right of possession without office found or actual entry. 5. That the want of office found, or actual entry, was not supplied by the act of confiscation, and consequently that the state's patentee had no right of entry, and could not maintain the possessory action of ejectment. 6. That as far as the Proprietary's right depended on the escheat, it was a right *in pais*, liable in its own nature to be defeated by adversary possession, or other matter *in pais*, and requiring an office found, or actual entry, to perfect it; that it was transferred to the state with all its original and inherent properties; and consequently was liable, even in the hands of the state, to be defeated by the adversary possession of *Tolly*, and those claiming under him. They referred to *Russell's Lessee vs. Baker*,

1807.

Hall
vs
Gittings.

1 *Harr. & Johns.* 71. *Kelly's Lessee vs. Greenfield,* 2 *Harr. & M'Hen.* 121. *Bro. Ab.* tit. *Prerogative, s.* 91. 2 *Hawk.* 448. *Bro.* 34. 4 *Coke,* 48, 58.

On the *second* bill of exceptions it was contended, 1. That if the escheat of *Holland's Park* had fallen at the time when *Tolly's Purchase* was granted, so much of the first tract as was included within the true location of the latter would pass by the grant of the latter. 2. And that if the escheat had not fallen, but fell afterwards, still the latter grant would operate as an *estoppel* on the Lord Proprietary, (who it was contended was bound by estoppels like other persons,) and would pass the land to the grantee of the latter tract by way of estoppel, and would defeat the title of the lessor of the plaintiff under his grant of *Friendship Compleated.* They cited *Kelly's Lessee vs. Greenfield,* 2 *Harr. & M'Hen.* 121. *Russell's Lessee vs. Baker,* 1 *Harr. & Johns.* 71. 3 *Blk. Com.* 308. 10 *Vin. Ab.* 454, 455, pl. 9, 10; 482, pl. 1; 484, pl. 15. *Co. Litt.* 45, a. 47, b. 352, a. *Litt. sect.* 58. 6 *Mod.* 258. *Hayne vs. Maltby,* 3 *T. R.* 441. *4th Supp. to Vin. Ab.* 127. *Fairtitle vs. Gilbert,* 2 *T. R.* 171. 4 *Com. Dig.* 78, 81, 84. *The Attorney-General vs. Snowden,* 1 *Harr. & Johns.* 332. *Moale vs. Howard,* in the general court, (see *post.*) *Owings vs. Norwood's Lessee, (ante* 96.) *Hawkins vs. Hanson,* 1 *Harr. & M'Hen.* 523, (argument of counsel.)

On the *third* bill of exceptions it was contended, that the location of an escheat grant was to be made by its own expressions, and not by those in the original grant. They cited *Dorsey's Lessee vs. Hammond,* 1 *Harr. & Johns.* 193. 2 *Shep. Ab.* 279. 14 *Vin. Ab.* 78, pl. 8. 2 *Roll. Ab.* 50. *Bac. Ab.* tit. *Grants,* (H.) 3 *Blk. Com.* 379. *Co. Litt.* 42. 2 *Blk. Com.* 347, 379, 380. *Bac. El. ch.* 3. *Hob.* 71.

On the *sixth* bill of exceptions it was contended, 1. That the circumstances stated did amount to a presumption in law, that the will of *Holland* was legally executed. They cited *Hands vs. James,* 2 *Com. Rep.* 531. *Croft vs. Pawlet,* 2 *Stra.* 1109. 5 *Bac. Ab.* 508. 2. That the statute of frauds did not extend to this country until after the time when *Holland's* will was proved. They cited *Clayland's Lessee vs. Pearce,* 1 *Harr. & M'Hen.* 29. *Carroll's Lessee vs. Llewellin, Ibid* 162.

On the *seventh* and *eighth* bills of exceptions it was contended, that *Holland* was seized of *Holland's Park* at the

time of his will and death; that the certificate of survey was four months before the date of the will, (the year then beginning the 25th of March, and October of course being before February;) and that the grant in 1684 would relate to the certificate of survey in 1683. They cited 18 *Vin. Ab.* 222. *Pigott on Com. Recov.* 26.

The counsel for *Gittings's Lessee*, on the *first* bill of exceptions, referred to the acts of October 1780, *ch.* 45, and *ch.* 49. 2 *Hawk.* 448, *ch.* 49, *s.* 1, 2. *Bro. Ab.* tit. *Prerogative*, 143, b. pl. 91. *Ibid* tit. *Devant*, 109, a. pl. 34. *Savil*, 7, (18th case). *Ibid* 70, (145th case). *Stanf. Pre.* 54, a. 2 *Roll. Ab.* 184, pl. 1, 2, 3, 4. 4 *Coke*, 58. *Taylor vs. Horde*, 1 *Burr.* 60.

On the *second* bill of exceptions he cited 10 *Vin. Ab.* 470, pl. 9; 482, pl. 1. *Co. Litt.* 47. b. 352. a. *Hath's Lessee vs. Polk*, 1 *Harr. & M'Hen.* 363.

On the *third* bill of exceptions he cited 2 *Shep. Ab.* 281. 14 *Vin. Ab.* 80. pl. 21; 83, pl. 41. 2 *Bac. Ab.* 661, 662. *Bac. El.* 86. 2 *Mod.* 3. *Bulst.* 177. 2 *Leon.* 235, *Trapp's* case. *Clayton*, 14, *Bradford's* case. 3 *Coke*, 9, *Dowties* case. *Brownl.* 42.

On the *sixth* bill of exceptions he cited *Collins vs. Nicols*, 1 *Harr. & Johns.* 399.

On the *seventh* and *eighth* bills of exceptions he contended, 1. That the escheat grant to the lessor of the plaintiff gave a presumptive right, and was *prima facie* evidence that the land was liable to escheat; that it was not shown by the defendant below that there was no such presumptive right, or that the land was not liable to escheat; that presumption was a rule of evidence, and not a fiction of law; that the evidence offered by the defendant ought not to have been admitted to defeat the right of the plaintiff, where for upwards of 100 years no person ever claimed the land under *Holland*, except the defendant, a wrong doer, who should not have the benefit of presumption in his favour. 2. That the facts stated, although they might be true, did not authorise the court to direct the jury to make the presumption, that *Holland* was seized of the land at the time of his will and death, no person ever having claimed or held under his will.

*Curia adv. vult.*

1807.

Hall
vs
Gittings

1807.        THE COURT OF APPEALS, at the present term, *affirmed*
⌣⌣⌣⌣     the judgment of the General Court on both appeals, con-
Hammond   curring in the opinions pronounced in the several bills of
vs
Norris    exceptions.

TILGHMAN, J. gave no opinion on the *third* bill of ex-
ceptions.

DECEMBER.        HAMMOND, *et al.* Lessee, vs. NORRIS.

*A deed located on the plots, and not counterlocated by the opposite party may be read by the party locating it, to show how it is located, but when its validity comes in question if it is bad, it is to have no effect*
*The clerk of a court has no authority by law to certify a fact under seal; his duty is to grant exemplifications*
*Parol evidence is not admitted to prove that a tract of land included in a certificate of survey, never was actually surveyed by the surveyor*
*Parol evidence admitted with the consent of the parties, to prove the law, practice and usages, of the land office, before the revolution*

APPEAL from the General Court. The appellant brought an action of *ejectment* for a tract of land called *Part of Wood's Inclosure*, lying in *Frederick* county, containing 2286 acres. The defendant, (now appellee,) took defence on warrant under the general issue plea, and by his locations on the plots returned, defended himself under his title to a tract of land called *Usher's Freehold*, resurveyed for *Thomas Usher* on the 12th June 1785, and granted to the defendant on the 2d of September 1800. The cause was tried in the general court at May term 1803.

1. The plaintiff having located on the plots a deed from *John Howard* to *Philip Hammond*, offered to read in evidence that deed, bearing date the 27th of September 1753, being a deed of bargain and sale by way of mortgage, conveying unto *Hammond* "all those two parcels of land, being parts of a tract of land called *Wood's Inclosure*, and sold to the said *John Howard* by *Joseph Wood*, one parcel containing

The efficient qualities of the different kinds of warrants used to take up vacant lands, set out

A person who takes out a warrant of resurvey, without having a title to the original tract resurveyed, acquires an equitable interest in the vacant land ad led, when the composition money is paid; and his grant therefor will relate to the date of the certificate of resurvey, if it appears that his certificate was returned to the land office previous to the time when a prior grant for the same land issued on a junior certificate of survey, made and compounded on after the composition money was paid upon his certificate: and unless it was so returned, the prior grantee was a fair purchaser without notice of such equitable interest, and his grant cannot be overreached or defeated by relation

The court refused to direct the jury, that if they were satisfied from the evidence, that by the rules of the land office the certificate of resurvey, under which the plaintiff claims, was liable to be vacated upon a caveat, though the composition money was paid thereon, if J H, for whom the same was made, had no estate in the original tract, and that upon the certificate being so vacated, the vacant land included therein, and also included by E D in his certificate, if compounded on in time, might legally be granted to E D, and being so granted, that the plaintiff has no title under his grant to any part of the land so included in the grant to E D

A deed for 86 acres of land, (being part of a tract,) without courses or distances, but referring to another deed, (not produced,) to ascertain the same, is not legal evidence to show title, or to support the location thereof on the plots, without producing the deed to which it refers

Nor were certain facts and circumstances admissible to prove the location of the 86 acres, or to show title thereto, or that the deed referred to, or some bond or contract for conveying the 86 acres by metes and bounds, &c. as located on the plots, had ever been executed

Where the plaintiff has made but one location on the plots of the beginning of the land for which the ejectment is brought', and that is counterlocated, the jury cannot find a beginning for the plaintiff different from that located by him

The plaintiff must make such locations of the land upon the plots as will suit his case

The jury cannot find a location of their own, but must find some one of the plaintiff's, if they find for him

If the beginning of a tract of land is lost or cannot be proved, then the beginning is to be found by reversing the lines of the tract from the first known and established boundary