Winter *vs.* White.

(Decided 1st March, 1889.)

---

## HENRY WINTER *vs.* JOHN CAMPBELL WHITE.

*Construction of Deeds—Effect of Variance between a General and a Special description in a Deed—Ejectment—Estoppel— Adverse possession.*

In the construction of a deed, as in all other instruments, the intention of the parties must prevail, unless it contravene some well settled rule of law.

The object of the descriptive part of a deed is to define what the grantor meant to convey, and the grantee to receive; and when the intention of the parties is apparent and plain on the face of the deed itself, there is no room for construction.

But where there are two descriptions, the one general and the other special, and they do not agree, the grantee may rely on the description which is most beneficial to him.

To entitle a plaintiff in ejectment to recover, he must prove either a paper title, or title by adverse possession; and the principle of acquiescence and estoppel recognized by Courts of equity, has no application to the case.

The possession which will entitle a plaintiff to recover in ejectment must be adverse as well as uninterrupted and exclusive.

The plaintiff in ejectment claimed title to the piece of land in controversy under a deed conveying to him "all those tracts or parcels of land * * * constituting the farm of which the late B. died seized," followed by a reference to the several deeds under which B. acquired title, and also by a reference to a survey of said tracts or parcels of land by D. in which the metes and bounds, courses and distances were given. HELD:

That the plaintiff was entitled to all the land constituting the farm of which B. died seized, although a part of it was not embraced in the courses and distances set out in the survey by D.


APPEAL from the Circuit Court for Howard County.

This is an action of ejectment brought in the year 1886 by the appellant against the appellee. The case is stated in the opinion of the Court.


*Exception.*—At the trial the plaintiff offered the five following prayers:

1. By the true construction of the deed from Haight to Winter, and the other title papers of the plaintiff offered in evidence, the plaintiff's title thereunder embraces all the farm upon which Theodore R. S. Boyce resided at the time of his death, and of which he was then seized, whether the description thereof given by William Dawson, Jr., and mentioned in said deed, be correct or not.

2. If the Court finds from the evidence that the land described either in the second, third or fourth counts

Winter *vs.* White.

of the declaration, was in the possession of Theodore
R. S. Boyce, as part of the farm upon which he re-
sided at the time of his death, and was so held and
claimed by him, and all those claiming under him,
down to and including the plaintiff, the whole embrac-
ing a period of more than forty years; and shall further
find that such possession was uninterrupted, exclusive,
and never in any way questioned or interfered with
by the adjoining owners, until within the last four or
five years; and shall further find that the defendant,
within said period, has taken possession of the land
described in either of said counts, then the plaintiff is
entitled to recover such land.

3. If the Court finds that for a period of more than
forty years prior to the institution of this suit, the
true line between the land of the plaintiff and the
land now owned by the defendant was recognized by
the owners of both of said properties to run from the
stone marked "C. V. 2," and "B. P.," to the east side
of the new cut road, at the point where the old worm
fence spoken of in the testimony of the witness, Z. M.
Isaac, and others, met said road; and shall further
find that said worm fence ran up the line towards said
stone, and corresponded substantially with said line,
and was kept up by said coterminous owners as and
for a division fence, and that said line so run corres-
ponds exactly with the first line of the defendant's
deed, and with the first line of Benson's Park, as run
by course and distance, with a proper allowance for
variation, and passes directly through the stone stand-
ing in the west edge of said road, and called for as
the beginning of the first line of Mrs. Comfort W.
Dorsey's deed, (if the Court so finds,) then the Court
ought to find said line to be the true division line
between the lands of the plaintiff and the defen-
dant.

4. If the Court finds that the first line of Benson's Park, of which the plaintiff is the owner, is the same as the sixth line of Chew's Resolution Manor, and is the same described in the deeds from Dorsey, executor of Mrs. Mary P. Dorsey to Mr. White and Mrs. Comfort W. Dorsey, as the first line of her whole estate, which was divided and sold by her executor; and shall further find that the stone standing under the fence, on the west side of the new cut road and shown on the plat made by the witness, Tustin, is the same stone called for as the beginning of the deed from Dorsey, executor, to. Mrs. Comfort W. Dorsey; and shall further find that the first line of said White's deed is correctly delineated on the plat made by the witness, Tustin, by the blue line running from the stone C. V. 2 to the new cut road, then the defendant is estopped from denying the correctness of said line as the true boundary line between his land and the land of the plaintiff.

5. By the true construction of the plaintiff's title papers, offered in evidence, if the Court finds the due execution of such papers, the paper title to lot No. 3, of the chancery decree, is vested in the plaintiff, and if the Court finds that the plaintiff, and those under whom he claims, have been in possession of said lot from the time of said decree in 1819, down to a short time before the institution of this suit; and shall further find that the stone mentioned by the witness, Tustin, at the distance of 133$\frac{2}{3}$ perches from the stone C. V. 2, is the stone mentioned in said decree as planted at the end of the first line of said lot No. 3, then said lot is to be located by said stones as calls, and, if the Court finds that said lot so located embraces the land described in the third count of the declaration, and shall further find that the defendant took possession of said land so described, then the plaintiff is entitled to recover under the said third count.

Winter *vs.* White.

The defendant offered the two prayers following:

1. That the plaintiff must recover upon the strength of his own title, and if the Court finds that the first line of the plaintiff's conveyance runs with the first boundary line of the tract patented as Benson's Park, the Court from all the evidence must locate, if possible, the said first line of the tract patented as Benson's Park, and the said line must be located from calls, if from all the evidence the Court can establish such calls, in disregard of courses and distances, and the plaintiff can establish no title beyond the said first line of the said tract called "Benson's Park."

2. That in locating the first line of the conveyance to the plaintiff from Miss Haight, offered in evidence, if the Court finds the execution of the same, the point where the said first line and the first line of the conveyance of the strip of land from Davis to Boyce, mentioned in said conveyance and offered in evidence, meet and intersect is a call; and under said conveyance to the defendant he can establish no title beyond a straight line drawn from the stone, the commencement of defendant's conveyance, if the Court finds the location of the same to said point of intersection, if the Court can locate the same from the evidence before it.

The Court (MILLER, J.,) rejected the prayers of the plaintiff, and granted those of the defendant. The plaintiff excepted, and the finding and judgment of the Court being against him he appealed.

The cause was argued before ROBINSON, STONE, IRVING, BRYAN, and McSHERRY, J.

*Wm. A. Hammond,* and *Arthur W. Machen,* for the appellant.

General words in a deed, descriptive of the land conveyed, will not be restrained by restrictive words,

added for the sake of precaution. *Bott vs. Burnell,* 11 *Mass.,* 163.

Where, on the face of a deed, the intent to convey a particular tract of land is clear, but the description by metes and bounds is, upon a survey, found to be erroneous, the description by metes and bounds will be rejected as surplusage. *Norwood vs. Byrd,* 1 *Richardson,* (*S. C.,*) 135.

Where there are two descriptions in a deed, and they do not coincide, the grantee is at liberty to elect that which is most favorable to him. 3 *Washburn on Real Prop.,* (*mar. p.* 628,) 422; *Hall vs. Gittings,* 2 *H. & J.,* 112.

Where the grant was "all that my farm * * * * on which I now dwell, being lot No. 17," &c., followed by a description of lot No. 17. By PARSONS, C. J.: The limits of this lot are truly described, but in fact the farm on which he lived was not lot No. 17, but a different parcel of land. By the rule then, this particular of the description is to be rejected, because without it the description is sufficiently certain, and because, if it be considered as an essential part of the description the deed will be void. *Worthington, et al., Ex'rs vs. Hylyer, et al.,* 4 *Mass.,* 205. The plaintiff must then, by these principles, be the owner of all the Boyce farm.

The old fence having been recognized by the owners of the adjoining properties as the boundary line between their lands, for over fifty years certainly, and presumably much longer, must be now regarded as the indisputable boundary.

The long acquiescence of adjoining proprietors in the practical location of a boundary line between their lands is conclusive, although it be proved that such location was originally made under an agreement resulting from a mutual mistake as to facts. * * * *

Winter *vs.* White.

"It is proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary." *Baldwin vs. Brown,* 16 *N. Y.,* 359; *Reed vs. Farr,* 35 *N. Y.,* 113.

A practical location and construction given by the parties and acquiesced in for eighteen years, was held by KENT, Chief Judge, to be conclusive. *Jackson vs. Ogden,* 7 *Johns.,* 241.

Where a fence was built and maintained the whole length of the line by both parties for twenty-five years, and there was an occupation by the parties, and those under whom they claimed, during all that time, the Court refused to straighten the boundary line. *Stuyvesant vs. Dunham,* 9 *Johns.,* 61; *Dunham vs. Stuyvesant,* 11 *Johns.,* 569.

Where the adjoining owners for more than fifty years had occupied, each on his own side, up to an old fence which had been kept up and maintained as a division fence for more than twenty years, it was held *prima facie* evidence of a practical location of, and acquiescence in the fence as the boundary line, in the absence of any qualification of the acts of the parties in mutually maintaining the fence between them. *Jones, et al. vs. Smith,* 64 *N. Y.,* 180.

"A mutual recognition of a given line by adjoining proprietors, accompanied by actual possession by one or both for the period of fifteen years, will be conclusive as to their respective rights." *Spaulding vs. Warren,* 25 *Vt.,* 323.

"Long acquiescence in an erroneous location will anthorize the jury to find that the plaintiff had agreed to a location different from that given by his deed; and whether the plaintiff knew his rights or not, such location or long acquiescence will conclude him." *Adams on Eject.,* note, *p.* 32.

Acquiescence in a dividing line for a period equal to that fixed by the Statute of Limitations for gaining

title by adverse possession, binds the party acquiescing, to that line. *Brown vs. Leete*, 2 *Fed. Rep.*, 440.

Occupation by a division fence for fifteen years will establish it as the division line. *Clark vs. Tabor*, 28 *Vt.*, 222.

But aside from the establishment of the fence as the boundary, upon the doctrine of location and acquiescence, which would seem to be abundantly supported by the aforegoing authorities, it is submitted that the appellant was entitled to the land up to the fence, under the well established principles of adversary possession.

Where two purchasers of adjoining lots took possession of their respective lots up to a division fence supposed to be the line, and each held thus more than twenty years, claiming title up to the fence, it was held to be immaterial whether such fence formed the true line or not, as the right of either party to claim beyond the fence was barred by limitation. *Hubbard vs. Stearns*, 86 *Ill.*, 35. To the same effect—*Schoonmaker vs. Doolittle*, 118 *Ill.*, 605.

"Where a grantee, in taking possession under his deed, goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves land not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse; * * * * and if continued the requisite length of time, will bar the right of the true owner." *Tyler on Eject.*, 905.

"It cannot be disputed that an occupation up to a fence for twenty years, each party claiming the land on his side as his, gives an incontestable right up to the fence; and equally whether the fence is precisely on the line or not. It is time that it should be settled beyond dispute, that where a person is in possession by a fence as his line, or by a house or stable, for more

Winter *vs.* White.

than twenty-one years, his possession establishes his right." *Brown vs. McKinney,* 9 *Watts,* 565.

Where a survey fixed the line by mistake ten feet too far north, and the parties "had been in the open, visible and actual occupation" accordingly for more than twenty years; held that they had a good title. *Bauer vs. Gottmanhausen,* 65 *Ill.,* 499.

Where one of two conterminous proprietors cleared and fenced up to a line of marked trees, believing that to be the dividing line, whereas it was at some points as much as twenty-five yards over on his neighbor's land, it was held that such act constituted an open and notorious adverse possession up to the marked line. *Mode vs. Long,* 64 *N. C.,* 433.

The contention that the *corners A and B, being fixed, the true line must be a straight one between those points, was overruled.* The effect of the possession up to the fence, "although it did not extend the defendant's paper title beyond the true line, was to create an adverse holding." *Ib.*

"Where the owner of land bordering on the land of another, through a mere misapprehension of the place of the dividing line, occupied and possessed as his own a portion of land beyond that line for more than fifteen years, (the statutory period,) it was held that this was an adverse possession sufficient to establish a title in the possessor." *French vs. Pearce,* 8 *Conn.,* 439.

*Henry E. Wootton,* for the appellee.

In this case the plaintiff bases his right to recover upon his paper title. He must recover upon the strength of his own title, and no question of adverse possession can arise. The plaintiff is bound by the recitals in his deed, and nothing is conveyed to him beyond the first line of "Benson's Park," and the first

line of his conveyance commences at the commence-ment of Benson's Park, and ends where the first line of the strip of land begins.  *Cresap's Lessee vs. Hutson,* 9 *Gill,* 276 ; *Hall vs. Gittings,* 2 *H. & J.,* 125 ; *Lannay's Lessee vs. Wilson, et al.,* 30 *Md.,* 546.

ROBINSON, J., delivered the opinion of the Court.

The plaintiff is the owner of a tract of land called "Benson's Park," and the defendant is the owner of an adjoining tract now called "Spring Garden," being part of "Chew's Resolution Manor." The piece of land in controversy, is a long narrow strip running between the two farms. The plaintiff claims title under a deed from Georgianna Haight, conveying to him all "those tracts or parcels of land situate in Howard County, constituting the farm of which the late Theodore R. S. Boyce died seized," followed by a reference to the several deeds under which Boyce acquired title, and also by reference to a survey of said tracts or parcels of land by William Dawson, in which the metes and bounds, courses and distances are given.

The first and main question in this case is, the con-struction of this deed. Here are two descriptions of the property, the one a *general description,* and the other a *special description.* Is the plaintiff entitled to claim under the general description, all those tracts or par-cels of land *constituting the farm of which the late Theodore R. S. Boyce died seized,* or is his title limited *to the land* embraced in Dawson's survey ? In the con-struction of a deed, as in all other instruments, the intention of the parties must prevail, unless such an intention contravenes some well settled rule of law. The object of the descriptive part of a deed, is to define what the grantor meant to convey and the grantee to receive; and when the intention of the parties is apparent and plain on the face of the deed itself, there

is no room for construction.　But where there are two descriptions, the *one general* and the *other special*, and they do not agree, the deed must be interpreted according to the well settled rules of construction.　And in such cases, it is the settled law of this State, that the *grantee may rely on that description which is most beneficial to him*.　In the early case of *Hall vs. Gittings*, 2 *H. & J.*, 112, CHASE, C. J., said, "that where there are two descriptions of land intended to be conveyed, the one by name and the other by metes and bonds, or courses and distances, the grant will operate to pass the land according to that description which is most beneficial to the grantee."　And again in the well considered case of *Buchanan's Lessee vs. Stewart*, 3 *H. & J.*, 330, argued by such distinguished lawyers as Luther Martin, and William Pinkney, Attorney-General of the United States, where an action of ejectment was brought to recover a tract of land described in the deed as "all that lot or parcel of ground situate, lying and being in Baltimore Town, which is known and distinguished on the plot of said town by the No. 25," and then followed by a description of the lot by courses and distances, the Court held that the entire lot passed by the general description, although part of it was not embraced within the special description by courses and distances. In delivering the opinion of the Court, CHASE, C. J., said: "It is equally well established, that the intention of the parties should prevail in expounding deeds, if not repugnant to some principle or maxim of the law, which is to be collected from the whole deed.　It is a position not to be controverted, that a deed is to be construed most beneficially for the grantee, whenever there is a necessity for resorting to that maxim. The apparent intention on the face of the deed is, that all of the lot No. 25 should pass to the grantee.　And the general words, all the lot No. 25, and which is known

and distinguished on the plot of the town by No. 25, are fully competent to transfer the whole; there is nothing in the additional description by course and distance from which it can be intended or inferred, that the general description was to be limited or modified; * * * * and there is not any thing appearing in the deed indicative of an intention to convey less than the whole lot." Now, in this case Miss Haight conveys to the plaintiff all the land which constituted part of the farm of which Boyce died seized, and the title of the grantor to every part of said land passed to the grantee, even though a part of it may not be included in the course and distance set out in Dawson's survey. And such beyond all question was the intention of the parties. This narrow strip of land in question, altogether not more than a half acre, was inclosed and had been claimed as constituting a part of the Boyce farm for at least a half century, and there is no reason to suppose Miss Haight, in conveying all the land which formed a part of that farm, intended to except this strip of land from the operation of the deed. And besides, it appears that beginning at the stone "C. V. 2," the beginning of "Benson's Park" and which is also the beginning of the plaintiff's land, and running by course and distance with the proper allowance for variation, the line so run is identical with the first line of the defendant's deed from Dorsey, executor, and that the division fence between the plaintiff's and the defendant's land has stood substantially on this line for fifty years. And, further, that all the land on the plaintiff's side of the fence was held and occupied and claimed as part of the farm on which Boyce lived, and by those claiming under him down to and including the plaintiff. And, if so, when Miss Haight conveyed to the plaintiff all those tracts or parts of tracts of land, which constituted part of the farm of which

Boyce died seized, we must conclude she meant to pass all the land embraced in the general description.    And, such being the case, the plaintiff's first prayer ought to have been granted.

Now, as to the second prayer, this ought, we think, to be modified by adding the word "adverse," so as to read "If the Court finds from the evidence that the lands described in the second, third or fourth counts of the declaration, was in the possession of Theodore R. S. Boyce as part of the farm upon which he resided at the time of his death, and was so held and claimed by him, and all those claiming under him, down to and including the plaintiff, the whole embracing a period of more than forty years; and shall further find that such possession was *adverse*, uninterrupted and exclusive," &c., "then the plaintiff is entitled to recover such land."

There was error also in rejecting the fifth prayer. The plaintiff in support of his title offered in evidence, the partition of Benson's Park, in Chancery in 1819, by which lot No. 3 was allotted to Samuel Gassaway, and which is described in the Chancery decree, as "Beginning at the original beginning of the whole tract, called 'Benson's Park,' and running with the first line of said land in a true direction towards a heap of stones, admitted to be at the end of the said first line, N. 49 degrees W. 133 perches and two-thirds of a perch, to a stone planted at the beginning of lot No. 1," as laid off in said partition.

Now Tustin testifies that a line running from the stone "C. V. 2," the beginning of Benson's Park, through the persimmon trees standing at the end of Mrs. Dorsey's first line, passes directly through a stone about two feet high, standing upright in the old fence between the plaintiff's land and Mrs. Dorsey's, at the distance of about 133 and two-third perches from the beginning; that the stone seems to be an ancient one,

and from its  location and appearance, the witness be-
lieves  it  to  be the  stone  mentioned  in  the Chancery
decree  as  planted  at  the  end  of  the  first  line  of  lot
No. 3; and  if so, a surveyor would locate lot No. 3 from
this stone and  the beginning  stone of  Benson's  Park
as calls, and  being so located, no part of  said  lot  No.
3 would  be upon the defendant's side of  the old fence.
If,  then,  the  plaintiff  has the paper  title to  No. 3
as  laid off  in  the  partition, and  he  and  those under
whom  he claims  have  been  in  possession of  said  lot
from  the  partition  in  Chancery  in  1819,  down  to  a
short  time  before the institution  of this suit, and  the
stone  described  by the  witness,  Tustin,  at  the  133⅔
perches from the  stone  C. V. 2  the beginning of  Ben-
son's  Park,  is  the  stone  mentioned  in  the Chancery
decree  of  partition  as  planted  at  the  end of  the first
line  of  lot  No. 3, then  lot  No. 3  must  be  located  by
said  stones  as calls; and if the lot so located embraces
the land described in the third count of the declaration,
then  the  plaintiff  was  entitled  to  recover under said
count.

We find  no  error  in  refusing  the  third  and fourth
prayers.     To entitle  the  plaintiff  to  recover  he  was
bound  to  prove either a  paper title, or title  by adver-
sary possession;  and the  principle of acquiescence and
estoppel  recognized  by Courts of  equity, has no  appli-
cation to this case.     It follows from what  we have said
that defendant's  prayers, which limited  the  plaintiff's
right  to  recover to  the  Dawson survey,  ought  to  have
been refused.

*Judgment reversed, and*
*new trial awarded.*

(Decided 1st March, 1889.)