DUDLEY LEE *vs.* JOHN HOYE'S LESSEE.—*December* 1843.

Extracts from record books deposited in the land office, showing the name and
rank of grantee, and number of the lot and acres,with a particular description
of such lot as surveyed, to which an officer or soldier of the Revolution was
entitled, which books purport to have been made under the authority of the
act of 1788, ch. 44, with a certificate from the register of the land office, un-
der his seal of office, that the same have been carefully collated and compared
with the original record books from which they were respectively taken and
agreed therewith, are sufficient evidence to show title in the person named
in such extracts, to the lot therein described.

An escheat grant is *prima facie* evidence of title, and is available for that
purpose until the contrary is proved.

It is not necessary nor usual, according to the practice of the land office, to
state on the face of an escheat patent whose lands were escheated, or the
facts or circumstances which shew that the lands were escheatable.

A patent which professed to grant, as escheat, several parcels of land which
it described, with contiguous vacancy, cannot include, as such vacancy,
another parcel of land which appeared to have been theretofore granted by
the State, and not enumerated as one of the parcels escheated.

The court will not instruct the jury after a lapse of seventeen years merely,
to presume the death of the patentee of land.

A death of a patentee will not be presumed to support a title to land, acquired
in violation of the law, and rules of the land office.

Before a title can be acquired in lands liable to escheat, the rules of the land
office require that two-thirds of the value of the land be paid to the State.

A warrant of resurvey should be founded upon a siezin in fee in the lands
upon which the resurvey is to be made.

A partial possession of land, with a general claim of title for fifteen years,
will not authorise the presumption of a conveyance to such claimant.

Lee *vs.* Hoye.—1843.

APPEAL from *Allegany* County Court.

This was an action of *Ejectment,* for a tract of land called *Flavia,* brought on the 10th February 1840. The demise was laid on the 1st January 1839.

The defendant pleaded *non cul,* and took defence according to his pretensions, as they shall appear to be laid down on the return of a warrant of re-survey to be issued in this cause, &c.

1ST EXCEPTION. The plaintiff to support the issue on his part joined in this case, offered in evidence the plats and explanations. He also offered in evidence the following certificates and extracts from the books of the land office:

STATE OF MARYLAND, *Sct:* I, *George G. Brewer,* register of the land office for the Western Shore of the State of *Maryland,* do hereby certify that there is deposited in and belonging to the office aforesaid, a certain record book, entitled, "Record of the Officers and Soldiers entitled to land westward of *Fort Cumberland,* in *Washington* county, with the numbers of the lots drawn for them, agreeably to an act of the General Assembly, passed November session 1788."

Received into the land office the 14th November 1789, by *John Callahan,* Reg. L. O. W. S.

And that the said record book, in a certain part thereof, under the caption of "Soldiers entitled to land westward of *Fort Cumberland,*" contains among others, the following entries, to wit, viz:

| *Names.* | *Rank and Regiment.* | | *No.* |
|---|---|---|---|
| *John Kidd.* | P. | 4. | 1225. |

And I do hereby further certify, that another record book, deposited in and belonging to the office aforesaid, entitled, Ledger A, and received into the said land office, according to the following receipt upon the first page thereof, to wit:

Received into the land office as a record, agreeably to the directions of an Act of Assembly, to dispose of the reserved lands westward of *Fort Cumberland,* in *Washington* county, &c., passed November session 1788.

Test, JNO. CALLAHAN, Reg. L. O. W. S.

And in a certain part thereof, contains as follows, to wit:

*December 10th*, 1787. In compliance with a resolution of the General Assembly of the State of *Maryland*, of the 20th May 1787, and a commission from the governor and council, to me directed, bearing date the 11th June 1787, for the purpose of surveying and laying out the reserve land, to the westward of *Fort Cumberland*, into convenient lots of 50 acres each, &c.

I hereby certify that I have carefully surveyed for the State aforesaid, 4165 lots of 50 acres each, lying and being in *Washington* county and State aforesaid, and on the manors, reserves and confiscated lands, to the westward of *Fort Cumberland*, as will appear by a general plat thereof, and certificates numbered in rotation from 1 to 4165, in this book and another titled Ledger B. Per FRANCIS DEAKINS.

And also the following entry, to wit:

No. 1225. Beginning at end of the second line of lot 1224, and running north-west ninety-seven perches, south twenty-six degrees, west one hundred and twenty-two perches, to the end of the second line of lot 1222, and with it reversed, south seventy-eight degrees, east sixty-eight perches, then by a straight line to the beginning, containing fifty acres.

And I do further certify that the foregoing entries have been severally compared and collated with the said original record book, from which they have been respectively taken, and that they agree and correspond therewith.

In testimony whereof, I have hereunto set my hand and affixed (Seal.) my official seal, this 6th day of October, 1841.

GEORGE G. BREWER, Reg. L. O. W. S., Md.

Similar certificates were offered in evidence for lots

No 1226 granted to *Timothy Langrel*,
" 1229 " to *John King*,
" 1230 " to *William King*,
" 1231 " to *George Elms*,
" 1235 " to *James Driver*.

For the purpose of shewing title in the respective persons, named in said papers to the respective lots of land claimed in this action, at the time said papers or entries were made, to

the sufficiency of which said extracts from said books of the
land office, for such purpose, the defendant by his counsel ob-
jected, on the ground, that the said extracts did not furnish
sufficient evidence to shew that the said lots of land had been
allotted to the respective persons therein named, by the com-
missioners, under and in conformity to the provisions and
requirements of the act of Assembly of 1788, chapter 44, so
as to vest the legal title to said lots in said persons respectively,
but the court (BUCHANAN, C. J. and BUCHANAN, A. J.,) was
of opinion, and so instructed the jury, that the said extracts
were legally sufficient for the said purpose for which they were
offered, to which opinion and instruction the defendant ex-
cepted.

2ND EXCEPTION. The plaintiff then to support the issue
on his part joined, offered in evidence the following patent:

"THE STATE OF MARYLAND, *To all persons to whom these
presents shall come, greeting :* Know ye,
that whereas, *John Hoye* of *Allegany*
county, on the 28th day of September,
1837, obtained out of the *Western Shore
Land Office,* a special warrant of es-
cheat, to re-survey and affect the follow-
ing lots, lying in the county aforesaid,
and contiguous to each other, viz: Nos. 1226, 1232, 1235,
1234, 1229, 1230, 1231, 1517, 2569, 2567, 2536, 2535,
2538, 2526 and 2527, with liberty of correcting errors, adding
any contiguous vacancy, and of reducing the whole into one
entire tract, and he, the said *John Hoye,* assigned the said
warrant of escheat to *James Smith,* of the county aforesaid.
In pursuance whereof, a re-survey was made on only the fol-
lowing lots, viz: Nos. 1226, 1232, 1235, 1229, 1230 and
1231, and a certificate thereof returned, when the same were
found to contain with fifty-five and a half acres of vacant land,
added the quantity of three hundred and fifty-four and a half
acres, and called "*Flavia,*" and he having since by his assign-
ment, bearing date the 28th day of February 1838, assigned,
transferred and made over the same unto *John Hoye,* who fully

T. W. VEAZEY,

(Seal.)

T. BLAND, Ch.

compounded for said land according to law.   The State of
*Maryland* doth therefore, hereby grant unto him, the said *John
Hoye,* the said lots re-surveyed as aforesaid, with the vacancy
added, reduced into one entire tract and called *"Flavia,"* lying
in *Allegany* county aforesaid.   Beginning for the outlines of
the whole, at the end of the third line of lot No. 1225, it
being also at the end of the second line of lot No. 1223, and
running thence reversing the third line of lot No. 1225, and
running with the second line of lot No. 1222, north seventy-
eight degrees west, sixty-eight perches, to the second line of
lot No. 2517, and reversing it and running with the second
line of lot No. 2516, and reversing the second line of lot No.
1225, north twenty-six degrees east, one hundred and twenty-
four perches, to the beginning of lot No. 1232, and reversing
the given line thereof, south eighty degrees west, twenty-three
perches, then reversing the third line of lot No. 1232, and
running with the second line of lot No. 2518, and the second
line of lot 2515, north twenty-six degrees east, one hundred
and twenty perches, then reversing part of the second line of
lot No. 1232, north sixty-six degrees east, one hundred and
forty-three perches, then north twenty-three degrees east,
ninety-three perches, to the second line of lot No. 1235, and
running with the lines thereof, north sixty-seven degrees west,
ninety perches, north twenty-six degrees east, eighty-five
perches, south sixty-seven degrees east, ninety-five perches,
then running with the first line of each of lots No. 1235 and
1226, south twenty-three degrees west, one hundred and se-
venty perches, to the end of the second line of lot No. 1230,
and reversing said line, and running with the second line of
lot No. 1231, south forty-five degrees east, two hundred
perches, then running with the third line and with the given
line of lot No. 1231, south forty-five degrees west, eighty
perches, north forty-five degrees west, one hundred perches,
to the end of the first line of lot No. 1229, then by a straight
line to the beginning, containing three hundred and fifty-four
acres and one half of an acre, according to the certificate of
re-survey thereof taken and returned into the *Western Shore*

*Land Office,* bearing date the fifth day of January 1838, and there remaining, together with all rights, profits, benefits and privileges thereunto belonging. To have and to hold the same unto him, the said *John Hoye,* his heirs and assigns forever. Given under the great seal of the State of *Maryland,* this 7th day of September 1838. Witness the Honorable THEODO-RICK BLAND, esquire, Chancellor."

And then rested his case, relying upon the same as legally sufficient, in connexion with the testimony offered in the first bill of exceptions, which is to be taken and considered as forming a part of this second bill of exceptions, to vest the legal title of the land, for which this suit is brought, in him, and to entitle him to recover the same in this suit, to the sufficiency of which said patent for the said purpose, the defendant objected, and prayed the court to instruct the jury, that the said patent was insufficient for the purpose for which it was so offered, on the ground, that it does not appear on the face of the patent whose lands were escheated, or any of the facts or circumstances, set forth to shew, that said lands so granted, were liable to escheat; which instruction the court (BU-CHANAN, C. J. and BUCHANAN, A. J.) refused to give, being of opinion, that the said patent so offered, was legally sufficient to vest the plaintiff, with title in fee in the lands it purports to convey, and that therefore, the plaintiff is entitled to recover; to which refusal and opinion of the court, the defendant excepted.

3RD EXCEPTION. The defendant then to support the issue on his part joined, offered in evidence the following patents:

"THE STATE OF MARYLAND, *To all persons to whom these presents shall come, greeting:* Know ye,

BEN. OGLE. that whereas, General *John Swan* of the *City of Baltimore,* on the 17th of October 1798, obtained out of the *Western Shore Land Office,* a special warrant to re-survey the following lands, lying in *Allegany* county, and contiguous to each other, viz: *Rich Glades,* originally, on the

A. C. HANSON, Ch.

9th of March 1798, granted him for one hundred and fifty acres, and lots No. 1233 and 1236, each containing fifty acres, with liberty of correcting errors, adding vacancy, and reducing the whole into one entire tract. In pursuance whereof, a re-survey was made, when the same were found to contain the exact quantity of two hundred and fifty acres, and there being no vacant land added. The State of *Maryland* doth therefore hereby grant and confirm unto him, the said General *John Swan*, the said lands re-surveyed as aforesaid, reduced into one entire tract, and called *Good Meadows*, lying in *Allegany* county aforesaid, beginning at a bounded white oak, numbered 2511, standing at the end of six hundred and twenty perches, on the first line of a tract of land called the *Royal Charlotte*, it being the beginning of lot No. 2511, and running with the given line of said lot reversed, south eighty degrees east, one hundred and eighty-five perches, to the end of the third line of said lot, then north twenty-six degrees east, seventy perches, to the end of the second line of lot No. 1235, and with it reversed, south sixty-seven degrees east, one hundred perches, to a pile of stones at the end of thirty-four perches on the third line of lot No. 1517, and with it reversed, south twenty-three degrees west, eighty-two perches, south fifty-nine degrees east, eleven perches, to a bounded red oak bush, south sixty-two degrees west, one hundred and fifty-six perches, to the end of the second line of lot No. 2515, and with it, north eighty degrees west, two hundred and eight perches, to a bounded black oak and white oak, the beginning of lot No. 2509, then 'by a straight line to the beginning, containing two hundred and fifty acres, according to the certificate of re-survey thereof taken and returned to the land office, bearing date the 27th of May 1799, and there remaining, together with all rights, profits, benefits and privileges thereunto belonging. To have and to hold the same unto him, the said General *John Swan*, his heirs and assigns forever. Given under the great seal of the State of *Maryland*, this 30th day of December 1800. Witness the Honorable ALEXANDER CONTEE HANSON, esquire, Chancellor."

"THE STATE OF MARYLAND, *To all persons to whom these presents shall come greeting:* Know ye,

BEN. OGLE. that whereas, General *John Swan*, of the city of *Baltimore*, on the 7th of Novem-

A. C. HANSON, Ch. ber 1799, obtained out of the *Western Shore Land Office*, a special warrant of proclamation of re-survey, and to affect lots No. 1227, 1228 and 1224, lying to the westward of *Fort Cumberland*, in *Allegany* county, and contiguous to each other, which lots were originally allotted to *Solethiel Gaff*, as settler on and entitled to a preference in the purchase of the same, who neglected paying the purchase money for the same, within the time limited by law. In pursuance whereof, a re-survey was made, when they were found to contain the quantity of one hundred and fifty acres, for which the said *John Swan*, paid to the Treasurer of the *Western Shore*, the sum of thirty-three pounds fifteen shillings, being the full caution money due according to law. The State of *Maryland* doth therefore hereby grant unto him, the said General *John Swan*, the said lots re-surveyed as aforesaid, reduced into one entire tract, and called *Gaff's Neglect*, lying in *Allegany* county aforesaid, beginning at a bounded white oak marked 2526, standing at the end of six hundred and forty perches on the north-east line from the bounded forked white oak, and running thence, south forty-five degrees west, two hundred and twenty-four perches, to the end of the second line of lot 1223, north forty-five degrees west, one hundred perches, north forty-five degrees east, two hundred and forty perches, to the beginning of lot No. 1231, and with the given line reversed, south forty-five degrees east, one hundred perches, then by a straight line to the beginning, containing one hundred and fifty acres, according to the certificate of re-survey thereof, taken and returned into the land office, bearing date the 28th of January 1800, and there remaining, together with all rights, profits, benefits and privileges thereunto belonging. To have and to hold the same unto him, the said General *John Swan*, his heirs and assigns forever. Given under the great seal of the State of *Maryland*,

this 16th day of April 1801.   Witness the Honorable ALEX-
ANDER CONTEE HANSON, esquire, Chancellor."

"THE STATE OF MARYLAND, *To all persons to whom these*
presents shall come greeting : Know ye,

ROBT. BOWIE.        that whereas, General *John Swan*, of the
city of *Baltimore*, on the 3rd of March

A. C. HANSON, Ch.  1803, obtained out of the *Western Shore*
Land Office, a special warrant, to re-
survey the following lands lying in *Allegany* county, and
contiguous to each other, viz : *Good Meadows*, originally on
13th of December 1800, granted him for two hundred and fifty
acres, *Gaff's Neglect*, originally on the 16th of April, 1801,
granted him for one hundred and fifty acres, and lots No. 1225,
1226, 1229, 1230, 1231, 1232, 1234 and 1235, each containing
fifty acres, with liberty of correcting errors, adding contiguous
vacancy, and reducing the whole into one entire tract.   In pur-
suance whereof, a re-survey was made, when the same were
found to contain eight hundred and thirteen acres and one
quarter of an acre, and there being no vacant land added.   The
State of *Maryland* doth therefore hereby grant and confirm unto
him, the said General *John Swan*, the said lands re-surveyed
as aforesaid, reduced into one entire tract, and called *South
Bar*, lying in *Allegany* county aforesaid, beginning at a bound-
ed white oak, numbered 2511, standing at the end of six
hundred and twenty perches, on the first line of a tract of land
called the *Royal Charlotte*, it being the beginning tree of *Good
Meadows*, one of the originals of this re-survey, also the be-
ginning of lot No. 2513, and running thence with the given
line of said lot reversed, south eighty degrees east, one hun-
dred and eighty-five perches, then with the third line of lots
No. 2513, 2514, 2519 and 4150 reversed, north twenty-six
degrees east, two hundred and forty-three perches, to the be-
ginning of the sixth line of lot No. 2572, and with it south
sixty-seven degrees east, ninety-three perches, to a bounded
white oak marked 2532, it being the beginning tree of lot No.
1234, one of the originals, and the end of the third line of lot
No. 1514, then with the said third line and the third lines of

lots No. 1516, 1517 and 1521 reversed, south twenty-three degrees west, two hundred and fifty-five perches south, fifty-nine degrees east, eleven perches, to the end of the first line of lot No. 1520, and with it reversed, south forty-five degrees east, two hundred perches, to a tract of land called *Chance,* then with *Chance,* south forty-five degrees west, three hundred and twenty perches, to the beginning of the second line of No. 1223, and with it, north forty-five degrees west, one hundred perches, to the beginning of the second line of lot No. 1222, and with it, north seventy-eight degrees west, sixty-eight perches, to the second line of lot No. 2517, then with said line reversed, and with the second line of No. 2516, north twenty-six degres east, one hundred and twenty-two perches, north forty-five degrees west, three perches, south eighty-eight degrees west, twenty-six perches, to lots No. 2508, then with it, and lot No. 2515, north twenty-six degrees east, one hundred and twelve perches, to the end of the second line of said lot, still with it and lot No. 2509, north eighty degrees west, two hundred perches, to the first line of the *Royal Charlotte,* and thence by a straight line to the beginning, containing and laid out for eight hundred and thirteen acres and one quarter of an acre, according to the certificate of re-survey thereof, taken and returned into the land office, bearing date the 10th of May 1803, and there remaining, together with all rights, profits, benefits and privileges thereunto belonging. To have and to hold the same, unto him the said General *John Swan,* his heirs and assigns forever. Given under the great seal of the State of *Maryland,* this 2nd day of March 1805. Witness the Honorable ALEXANDER CONTEE HANSON, esquire, Chancellor.

Also the plats and explanations which accompany this bill of exceptions, and which are to form a part thereof. He also proved by *George W. Devicmon,* that from thirty-two to thirty-four years ago, he resided in the immediate neighborhood of the lands claimed by the plaintiff in this suit, and continued to live there during a period of twenty years, and that during all that time he never heard of *John Kid, Timothy Langrel, John King, William King, George Elms, Samuel Denny* and *James Driver,*

or either of them, being in that part of the country, or making any claim whatever to said lands. The defendant further proved by *William Ashby*, a competent witness, that he was born in the neighborhood of said lands, and is now fifty-six years old, that he, during all that time, never heard of the existence of the above named persons, or any one of them, and never heard of their being in the neighborhood of said lands, or enquiring after or making claim to the same, np to this time. The defendant also proved by *John Waltz*, a competent witness, that he moved to the immediate neighborhood of the land claimed by the defendant in this action, and adjoining the same as far back as the year 1797, and has continued to live there ever since, and up to this time; that he saw the several lots of land contained in the tract of land called *South Bar*, run out in the year 1798, and that the said land has been claimed by said *Swan*, and those claiming under him, down from 1803, to the present time; that the possession or improvement numbered No. 1 on the plats, was made by *George R. Waltz*, about seventeen years ago, and the possession or improvement No. 2, as shown on the plats, was made about ten or twelve years ago, and that the same were made under the defendant, and as his acts; and further, that during the whole time from the year 1803, down to the present time, he never heard of any person claiming said lots of land, or any of them, except the said General *John Swan* and the defendant, and that at the time of the institution of this suit, and for several years before, *Dudley Lee* the defendant, was in possession of said lots as the tenant of *James Swan*. It was admitted by the plaintiff, that the land in controversy has been demised to the defendant and his heirs, by the last will and testament of the said General *John Swan*, deceased, his father, made on the 27th of May 1820.

Whereupon the defendant by his counsel, prayed the court to instruct the jury, that they might presume the death of the respective parties hereinbefore named, as the holders and owners of said lots, without heirs at the time the said lots of land were granted to the said *John Swan*, by the State of *Maryland* as aforesaid, and that the State of *Maryland* therefore,

at the time the patent was issued to the said General *John Swan,* for the said lots of land, or a part of the tract of land called *South Bar,* had a right to grant the same, they then being liable to escheat, and that the title in fee of said lots, did pass by the said patent for *South Bar,* from the State of *Maryland* to the said General *John Swan,* and that therefore the plaintiff is not entitled to recover in this case upon the title so adduced, and relied upon by him as aforesaid; which prayer and instructions the court (BUCHANAN, C. J. and BUCHANAN, A. J.,) refused, being of opinion, that the said patent for *South Bar,* passed no title whatever to the said *John Swan,* for said lots so embraced in the same. To which refusal and opinion, the defendant excepted.

4TH EXCEPTION. The defendant then further to support the issue on his part joined, in addition to the evidence offered in the third bill of exceptions, which is to be taken and considered as forming a part of this fourth bill of exceptions, proved by competent testimony, that General *John Swan* was taxed with the said tract of land called *South Bar,* including said lots, from the year 1805, to the time of his death, and paid the taxes on the same, and that since his death down to the present time, the said land in controversy has been taxed to the defendant, who had paid the taxes on the same.

Whereupon the defendant by his counsel, prayed the court to instruct the jury, that they may and ought to presume, that deeds of conveyance were duly made, executed and ackowledged, conveying to the said *John Swan,* in his life time in fee, the said lots of land so owned by the soldiers, the respective said original owners thereof, which instruction the court refused to give; to which opinion and refusal of the court, the defendant excepted.

The verdict and judgment being against the defendant, he prosecuted the present appeal.

The cause was argued before STEPHEN, ARCHER, DORSEY and SPENCE, J.

By ALEXANDER and SCHLEY for the appellants, and
By PRICE for the appellee.

STEPHEN, J. delivered the opinion of this court.

During the trial of this case, several exceptions were taken to the opinions of the court below, upon which it becomes the duty of this court now to decide. The plaintiff to support the issue on his part joined, offered in evidence certain certificates and extracts from the books of the land office, for the purpose of shewing title, in the respective persons named in said papers, to the respective lots of land, to recover which this action was instituted, at the time said papers and entries were made; to the sufficiency of which extracts from the books of the land office for such purpose, the defendant objected, on the ground that said extracts did not furnish sufficient evidence to prove that said lots of land had been allotted to the respective persons therein named by the commissioners, so as to vest the legal title to said lots in said persons respectively; but the court was of opinion and so instructed the jury, that the said extracts were legally sufficient for the purpose for which they were offered; to which opinion and instruction the defendant excepted; and whether in that opinion there was error, it is now necessary to determine.

By the act of 1788, chapter 44, it was made the duty of the commissioners to distribute the lots in controversy among certain officers and soldiers by lot, and to endorse the name of the officer or soldier on the ticket, containing the number drawn by such officer or soldier; and the law provides that thereupon, an estate in fee simple should be vested in the officer or soldier in such lot, without any patent, deed or grant, to be issued for that purpose: a legal estate in fee therefore vested in the officers and soldiers by operation of law, without any further evidence or muniment of title to be furnished by the officers of government for that purpose. The law directing the distribution, also provides that the commissioners shall make a record of all the lots by them distributed among the said officers and soldiers, and return the same to the Register of the Land Office, to be by him safely kept. The said law also recognises the validity of the books, in which are entered the certificates of all the lots distributed as

aforesaid, ascertaining and defining their respective bounda-
ries and locations. From these books and the record returned
into the land office by the commissioners, the certificates and
extracts offered in evidence were taken and certified by the
register of the land office, and we are of opinion that they
were good and sufficient evidence for the purpose for which
were offered. So far as the question of title was involved,
they were by law invested with all the legal properties and
attributes of a patent, and were therefore competent and ad-
missible evidence; the certificates of the register embracing
every thing which the records of his office can furnish in rela-
tion to the title and ownership of such lots.

The plaintiff then in addition to the preceding evidence,
offered in evidence an escheat patent for the land for which the
ejectment was brought, and there rested his case, relying upon
the same as legally sufficient, together with the evidence in
the first bill of exceptions to vest the legal title of the land, for
which the suit was brought, in him, and to entitle him to re-
cover; but the defendant objected to the sufficiency of the
patent for that purpose, on the ground that it did not appear on
the face of the patent whose lands were escheated, nor were
any of the facts or circumstances set forth to shew that said
lands were liable to escheat; but the court overruled the objec-
tion, and were of opinion that the patent was legally sufficient
to vest the title in fee in the plaintiff in the lands it purported
to convey, and that therefore the plaintiff was entitled to re-
cover.

In this opinion of the court there was no error, so far as the
same was objected to by the defendant. In 2 *H. & J. Rep.*
126, the principle is stated to be, that an escheat grant is
*prima facie* evidence of title, and is available for that purpose
until the contrary is proved. It is not necessary or usual
according to the practice of the land office, to state on the
face of the patent whose lands were escheated, or the facts or
circumstances which shew the lands were escheatable. Where
a warrant regularly issued, has been executed by the proper
officer, and a certificate returned, which has laid a sufficient

time in the land office without caveat, to justify the emanation of a grant, it is but a fair, reasonable, *prima facie* presumption, that the land taken up was escheatable, and that the title passed to the grantee. But the court erred in that part of their opinion, in which they declared that the plaintiff was entitled to recover all the land covered by the patent, as well that part which was escheated, as that which had been taken up as vacancy. It appears by the proof in the case offered by the plaintiff himself, that lot numbered 1225, had been allotted to a certain *John Kidd*, which was taken up and included in his patent, as vacancy.

We think there was no error in the opinion of the court in the third bill of exceptions. The lots were distributed to the soldiers in 1789, in virtue of the act of Assembly passed for that purpose, and *South Bar* was patented on the 2nd March 1805, a period of time too short to warrant a presumption of the death of the holders of such lots, without heirs, under the circumstances of the case; there being no proof moreover that the soilders ever resided on the lots, or in the neighborhood where they were situated, or any evidence offered of any facts or circumstances on which such a presumption could be properly founded. But such a presumption at all events, ought not to be made in support of a title, acquired in violation of law and the rules of the land office, which require two-thirds of the value to be paid to the State, before a title can be obtained in lands liable to escheat, and which also require that a warrant of resurvey should be founded upon a seisin in fee, in the lands upon which the resurvey is to be made; neither of which essential conditions appear to have been complied with in the case of the patent for *South Bar*.

We think there was no error in the opinion of the court in the fourth bill of exceptions. The possession of the defendant of the lots in controversy was only a partial one, and that for so short a period as ten or fifteen years, with a general claim of title, was too short a period to warrant the presumption of a conveyance of the lots to the patentee of *South Bar*, as prayed for by the defendant. For the reasons above stated,

the judgment of the court below is reversed and a procedendo ordered.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**