## John Dorothy *vs.* Gustavus E. Hillert.

The general rule of the Land Office, in cases of *caveats* to patents, is; *if the case be doubtful in its character,* to grant the patent, but where it is *manifest* that a patent would be of no benefit to the caveatee, and would be unjust to the rights of the caveator, it will not be granted.

Where the caveator has *clearly shown* a title by possession, which would, under the act of 1818, ch. 90, defeat the title to be derived under the patent, his *caveat* ought to be sustained.

Appeal from the Commissioner of the Land Office.

The appellant obtained from the Land Office, on the 7th of September 1854, a special warrant of survey to take up a small tract of vacant land lying on the north side of Severn river, in Anne Arundel county. All the preliminary steps were duly taken for the obtention of a patent, but the appellee filed a *caveat* to the granting of the same, and testimony was taken before a justice of the peace, in support thereof.

This testimony shows that the land claimed as a vacancy had been in possession of those under whom Hillert claims for more than a hundred years, they cultivating it and claiming it as part of the adjoining tract, and that their right to its possession was never questioned by any one until one William Caton obtained a warrant of escheat and vacancies in 1842, under which the same land was surveyed. The proceedings in the Land Office, upon a *caveat* filed to Caton's claim, with the Chancellor's order ruling the *caveat* good, were also relied upon by Hillert.

It was admitted by the caveatee, that one of the parties through whom the caveator claims, more than thirty years since was in possession of the land claiming title thereto, and was accustomed to exercise acts of ownership over the same.

The Commissioner (Murray) ruled the *caveat* good, and Dorothy appealed, and filed the following reasons for his appeal:

" The caveatee in this case supposing that the reason of the Commissioner of the Land Office for refusing his application, is because the said Commissioner thinks the act of 1818, ch. 90, prevails in this court, so as to prevent him from issuing a

patent where the party objecting, and those through whom he claims, have been in possession for more than twenty years, and for other reasons, makes the following reasons for appealing:

"1st. Because the act of 1818, ch. 90, never meant to remove (in cases where the State is patentor,) the trial of title to land cases to the Land Office, or in such cases to give the Commissioner of the Land Office concurrent jurisdiction with any other court, but leaves the jurisdiction exactly where it was before the passage of said act.

"2nd. That the said Commissioner ought to have issued a patent to the caveatee, which would have enabled him (without which he cannot) to bring an action for the land, when the question of possession under said act would arise before the ordinary and proper tribunal, with the benefit of a jury trial."

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Henry M. Murray* for the appellant:

Every step required by law to obtain a patent, was taken by the appellant in this case, and but for the *caveat* a patent would have issued. No patent or original title derived from the State, or any power before the revolution, in Hillert or those through whom he claims, is alleged or seems to have been relied upon. So far, then, the original title is in the State, and liable to be patented.

The defence set up throughout the testimony, is the one of possession, under the act of 1818, ch. 90. The appellant insists that this act is not applicable to the Land Office, the jurisdiction of which is as though that act had not been passed. The language of the act itself, its natural construction, and the practice of the Land Office, forbid the application of it there. The, words "such possession shall be a bar to all right or claim derived from the State *under any patent* issued upon such warrant or warrants," *presume* a patent to have been issued, and allow possession to be given *in evidence* as a

bar against the claimant *"under the general issue."* The policy of the State sanctions this construction of the act. In case a wrong-doer occupies the property of the State, not set apart for her especial use, the practice of the State is not to eject him by any direct means, but to grant her interest, which enables the grantee to assume the position of the State, and test the validity of the occupant's title. Indeed, if private enterprise was not stimulated to discover these occupations, they would be rarely known. The State issues a patent subject to the conditions of the act of 1818, ch. 90. The patentee takes no other interest than that of the State. When the patent issues, the jurisdiction of the Land Office ceases, and the act operates. Not even in criminal cases is the trial by jury of more importance than in the trial of land cases. If possessory title could be rightfully set up in the Land Office, both plaintiff and defendant would be deprived of proceeding, according to the ordinary and immemorial forms of law.

The practice has always been, where the original title has not passed out of the State, to issue a patent to the party complying with the requisites of law, which enables him to bring his action of ejectment, and then the defendant may rely upon the act of 1818, where the testimony is delivered under the eye of the court, liable to exception, and the facts are ascertained by a jury. 2 *H. & McH.*, 122, 123, *Kelly's Lessee vs. Greenfield.* 2 *H. & J.*, 112, *Hall vs. Giltings.* 1 *Md. Rep.*, 44, *Mitchell vs. Mitchell.* 5 *Do.*, 237, *Hoye vs. Swan's Lessee.*

*Alex. B. Hagner* for the appellee, argued:

That the Judge of the Land Office is to decide all cases of *caveats* according to the acts of Assembly, the rules of the office, *and the principles of equity and good conscience;* and neither of these would warrant the granting of a patent in this instance. The general practice of the Land Office is to issue the patent in cases of *doubt,* but where it *clearly appears* that the patent would be of no avail, it will not be issued. 1 *Bland,* 316, *Ridgely vs. Johnson. Ibid.,* 319, *Cunningham vs. Browning. Landholder's Assistant,* 84, 373, 375, 379,

424, 425, 431. In the case of *Chapman vs. Hoskins*, 2 *Md. Ch. Dec..* 493, the late Chancellor, as Judge of the Land Office, ruled the *caveat* of Chapman good, and chiefly for the reason of the "long, uninterrupted and unmixed possession of himself and those under whom he claims," and then adds:°
"That his title, founded on this possession, is impregnable against any title which the State can grant, is *conclusively shown* by the acts of 1818, ch. 90, and 1849, ch. 424." The same reason applies to this case. The evidence of possession for more than one hundred years, on the part of the caveator and those under whom he claims, is too clear for doubt. It gave him an *impregnable title* against any patent the State might issue. The act of 1852, ch. 177, sec. 2, dispenses with the necessity of his showing a patent from the State, and permits him to set up a title by possession which may be proved by acts of user and ownership, without actual enclosure. A patent would have been of no earthly use to the appellant, for it would not have enabled him to recover the land, and this *clearly appeared* to the Judge of the Land Office, and he was, therefore, clearly right in ruling good this *caveat*.

ECCLESTON, J., delivered the opinion of this court.

It has been the long established practice in the Land Office, (as insisted upon by the appellant's counsel,) when a *caveat* is filed, if the case be doubtful in its character, to grant the patent. This rule was adopted because, in the event of a decision adverse to the caveatee, he would be excluded from an opportunity of having his rights examined and decided upon by any other tribunal; whilst permitting the patent to issue would leave both parties in a condition to have a full and fair trial respecting the title to the property in contest. But although this may be true in regard to cases of doubt, it is equally true that the Chancellors, acting as Judges of the Land Office, have held it to be improper that a patent should issue, where it is manifest that it could be of no benefit to the caveatee, and would be unjust in regard to the rights of the caveator. And this, we think, is the character of the case before us.

The reason for the rule in cases of doubt has not the same

force since the act of 1853, ch. 415, giving a right of appeal, as it had formerly. But admitting that this rule should still exert its original influence, yet, in our opinion, the title of the appellee, by possession, is amply sufficient to sustain the decision of the Commissioner of the Land Office.

The act of 1818, ch. 90, provides, "That whenever land shall be taken up under a common or special warrant, or warrant of resurvey, any person or persons, bodies corporate or politic, may give in evidence, under the general issue, his, her or their possession thereof; and if it shall appear in evidence that the person or persons, bodies corporate or politic, or those under whom they claim, have held the lands in possession for twenty years before the action or actions brought, such possession shall be a bar to all right or claim derived from the State under any patent issued upon such warrant or warrants; *Provided always*, that nothing herein contained shall be construed to affect any title or titles under any common or special warrant, or warrant of resurvey, where the same shall have been laid before the passing of this act."

A special warrant is one of those mentioned in the act, and such a warrant gives rise to the present controversy. And believing (as we do) the appellee has shown a full title to the land in dispute, by possession far beyond twenty years prior to the issuing of this warrant, we cannot but believe, also, that if a patent had issued upon it, and the appellant had instituted an ejectment for the land, he would certainly have been defeated by the appellee's title. What possible benefit, therefore, would it be to grant Dorothy a patent in such a case? And would not granting it be doing injustice to Hillert, by affording Dorothy an opportunity of harrassing him by a lawsuit in reference to property, the title to which, under the existing laws of the State, is in Hillert, without doubt.

The appellant's counsel has contended that the act of 1818 should have no effect in the Land Office, when the question to be decided is, whether a patent shall be granted, because the provisions of the act have reference to possession as a defence only where a patent has been issued; consequently the act contemplates the granting of a patent without regard to any

claim of title by possession, but allows the party so claiming to avail himself of his possession as a bar to any action based upon the patent. If, however, as has been said already, a caveat ought to be sustained when it is manifest a patent can be of no advantage whatever to the caveatee, because the caveator has a clear title to the land, it matters not whether his title rests upon the provisions of the act of 1818, or of any other statute, or on common law principles. Inasmuch, therefore, as the act of 1818 very explicitly declares that a title acquired by twenty years possession "shall be a bar to all right or claim derived from the State under a patent issued upon either a common or special warrant, or warrant of resurvey," a patent to Dorothy, on his special warrant, could not have been of the least benefit to him, when the evidence adduced, in connection with the admissions in the case, show most conclusively that the land in controversy has been in the possession of the caveator and those under whom he claims for much more than twenty years.

Believing, as we do, that to have issued the patent, under the circumstances, in opposition to the caveat of Hillert, would have been an act of injustice to him, the decision below will be affirmed, with costs to the appellee.

*Decree affirmed with costs.*