SOLOMON ARMSTRONG *vs.* THOMAS H. BITTINGER and
CHRISTIAN J. BRENNAMAN.

ESCHEAT.

*Commissioner of Land Office—Patents—Warrants of Re-
survey—Caveats—When patent should issue—Facts neces-
sary to be stated in warrant and certificate—Code, Art. 57,
sec. 9.*

Where there is a real doubt as to the validity of the caveator's objections to
the issual of a patent, *and the proceedings are otherwise unobjectionable,* the
general rule of the Land Office has been to overrule the caveat and to allow
the patent to issue, leaving the question of the legality of the patent to be
afterwards tried in an action of ejectment or some other appropriate pro-
ceedings.

It is not necessary for the caveator to show an interest in the land in question
in order to a refusal of the patent.

The patent should be refused if *any* good cause be shown against it, though
the interest of the caveator be not proved.

The application for a patent of escheated lands and the warrant issued thereon
should state that the owner of the land *died seized in fee, intestate and with-
out heirs.*

The Commissioner of the Land Office in issuing the patent, does not conclude
any question of right, but an escheat grant is *prima facie* evidence, and is
available for that purpose until the contrary is proven.

Land which has escheated can be taken up only under an escheat warrant.

But if there be no fraud or imposition practised upon the State, and a party
has purchased *and paid for* lands supposed to be vacant, but which in fact
came to the State by escheat, and the party receiving the grant has held
and exercised acts of ownership over the land for a period to give him the
protection of Art. 57, sec. 9, of the Code, he ought not to be disturbed, or
have his title clouded, or brought into question by a subsequent grant
issued to another person upon an escheat warrant.

APPEAL from the Commissioner of the Land Office.

Thomas H. Bittinger and Christian J. Brennaman set forth to the Commissioner of the Land Office that there was escheat to the State two lots in Garrett County, Md., of the military lands lying westward of Fort Cumberland, in said county. At their prayer, the Commissioner issued to the surveyor of the county his warrant of resurvey on the 6th day of November, 1873, by virtue of which a certificate of resurvey was returned by the surveyor, May 13th, 1874. Afterwards Bittinger and Brennaman paid to the Commissioner of the Land Office the composition money and went into possession of the land.

On June 24th, 1875, a caveat was filed against them by Sarah Holton and Robert Armstrong, and the name of Solomon Armstrong was also afterward added to the caveators. Evidence was submitted tending to show that the land belonged to Solomon Armstrong, having descended to him from his uncle George Armstrong, to whom the land in question had been ceded for services in the Revolutionary war.

After evidence had been offered by the caveators concerning the residence of said Solomon, his relations and pedigree, the following question was asked by the caveators and answered by said Solomon:

*Q.* 25. From the best information you have obtained, and are able to obtain, state whether you are willing to say, under your oath, that you believe yourself to be the legitimate heir of George Armstrong, to whom the land in controversy in this case, known as the "Laurel Swamp," in Garrett County, Maryland, was ceded by the said State for services rendered in the Revolutionary war?

*A.* I believe I am; but I knew nothing of the land until the present time.

Examination closed on the part of caveators.

Cross-examination on the part of caveatees.

*Q.* 1st. How do you know that your relative was the same person to whom this land was granted by the State?

*A.* Only by the appearance; if you can find another George Armstrong in Baltimore County, this may not be the one; I could not tell which was which.

*Q.* 2nd. When did you first know that there was any land in dispute in this case?

*A.* Mr. R. W. Rasin wrote a letter to me to that effect before I knew anything about it; this was in September, 1875.

And afterwards on the same day, the caveatees by their counsel filed the following exceptions, viz.,

The said caveatees, Bittinger and Brennaman, except to the evidence of Solomon Armstrong for the following reasons:

1st. To the competency of the said Solomon Armstrong, to be examined as a witness in this case for any purpose, on the ground of his alleged interest in the subject-matter.

2nd. To his answer to the 17th interrogatory, because the same is hearsay.

3rd. To his answer to the 20th interrogatory, because the same is hearsay.

4th. To the 22nd question and the answer thereto, because the same are hearsay; and also because he says he *thinks* Geo. Armstrong was killed in the Revolutionary war.

5th. To his answer to the 23rd interrogatory, because his statement of the rank said Geo. Armstrong held, is based on the information derived from his father and mother, a fact that cannot be proved by hearsay testimony.

6th. To the 25th question and answer thereto, because the interrogatory is leading, and the answer is based on information and the belief of the witness.

7th. The evidence is inadmissible for other reasons apparent on the record.

And the cause having been submitted, the caveat was overruled, April 5th, 1876. From this decision of the Commissioner and the order thereon passed, the caveators appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*R. R. Boarman,* for appellant.

The appellant filed a caveat in the Land Office, to the issuing of the patent, claiming to be the lawful heir of George Armstrong, who was uncle of the appellant; that said George Armstrong was a captain in the revolutionary war.

On the records of officers and soldiers entitled to land under the Act of 1788, in the Land Office, Captain George Armstrong of the line in the Revolutionary War, received a patent from the State, for the two lots in question. And it is agreed between the counsel, that the records in the Land Office showing this fact, be used and treated as if regularly inserted in the record of this case. They were used before the Commissioner.

The evidence of the appellant was taken before a magistrate, and the question is, whether that evidence is competent and sufficient to establish the appellant's claim. .

The evidence is hearsay, but that kind of evidence to prove family tradition, pedigree, &c., which is competent and admissible. *Pancoast's Lessee vs. Addison,* 1 *H. & J.,* 350; *Shields vs. Boucher,* 1 *DeGex & Smailes,* 50; 1 *Taylor on Evidence,* 582 *and* 584; 4 *Md. Ch. Dec.,* 16.

If the evidence is competent, we submit that it fully establishes that the appellant is the lawful heir of Captain George Armstrong, and that the patent should not have been issued by the Commissioner.

*P. H. Tuck* and *Wm. H. Tuck*, for appellees.

The question is, whether George Armstrong, to whom these lots were assigned, died intestate and without heirs, and unless the Court is satisfied that Solomon, the applicant, is heir to *that* George, there is no proof on which the warrant can be claimed by the appellee.

The appellee will contend :

1. That under the circumstances of the case, the matter of controversy ought to be remitted to a Court and jury, according to the usage of the Land Office. 3 *Bland,* 465.

This practice is not affected by the fact that an appeal now lies to this Court from decisions of the Commissioner.

The reason of the rule is found in the greater facilities of Courts of law, in determining such disputes with the aid of a jury, especially as so many years have elapsed, and questions of possession and other modes of title may arise on the trial, which the Commissioner could not settle.

2. It ought to be *clearly* shown that the appellant is heir-at-law to the *very* George Armstrong, to whom these lots were assigned.

The witness says, that his uncle was killed during the war, as his father told him. But his father never claimed the lots, though he must be presumed to have known of these, as rewards for services, and it was not until September, 1876, that any one put in any claim for them, although the family always resided in Baltimore County, and his father, until 1838 or 1839.

He must not show himself heir to some George Armstrong, who might have been a captain in the army. There were many soldiers and officers whose names do not appear on the rolls. His uncle might have been one of these, and not entitled to land, as was the case with his father.

Although the pedigree may be proved by declarations of his father and mother, his rank in the army cannot be proved in that manner, and without proof of the fact, the claim of the appellant must fail.

Considering the manner in which the appellant was brought into the case, there is every reason for allowing the question of title to be investigated in a tribunal better suited than the Land Office for that purpose. Hence, the patent ought to be issued and the appellant left to his remedy at law.

ALVEY, J., delivered the opinion of the Court.

. According to the view we have of this case, it is not necessary that we should decide the question, whether Solomon Armstrong, the caveator, be the heir-at-law of Captain George Armstrong, to whom military lots, Nos. 2367, 2368, 2395, and 2396, were allotted, of the land lying west of Fort Cumberland, appropriated by the State to the officers and soldiers of the Maryland line, for services in the revolutionary war. Independent of all interest that the caveator may have, we think no patent should issue on the proceedings disclosed by the record.

While it is true, that where there is a real doubt as to the validity of the caveator's objections to the issual of a patent, and the proceeding be otherwise unobjectionable, the general rule of the Land Office has been to overrule the caveat and to allow the patent to issue, leaving the question of the legality of the patent to be afterwards tried in an action of ejectment, or in some other appropriate proceedings. But, on the other hand, there is no rule of the office which requires that the caveat shall be dismissed upon failure of the caveator to show an interest in the matter in dispute. On the contrary, this Court, in the case of *Patterson vs. Gelston*, 23 *Md.*, 446, expressly declared, "that looking to the nature of the subject, it is reasonable that a patent ought to be *refused*, if any good

cause be shown against it, though the interest of the party making the objection should not be proved. In most cases, the caveat proceeds upon the ground that some right or title of the caveator would be interfered with by the grant of the patent; but as the question is always whether it is lawful, right and just to issue the patent, this may and sometimes does depend upon other and higher considerations than the rights of the caveator, and therefore a caveat will not be dismissed merely for want of interest in the caveator in the matter in dispute ; nor would this Court refuse to entertain his appeal on that ground.''. The Judge of the Land Office may, therefore, on caveat, or on an application for a patent, where there is no caveat, refuse a patent on account of a violation of or departure from the rules of the office. 4 *Md. Ch. Dec.*, 31.

In this case, the record does not disclose the suggestion or application upon which the escheat warrant issued ; but the warrant recites the application, and in neither the warrant, nor the certificate of its execution, returned by the surveyor, is the name of any party mentioned, by whose death, intestate and without heirs, the land had become escheat to the State. In the *Landholder's Assistant*, 470, the requisites of the application and the warrant issued thereon are stated, and it is there said, that the party believing the land to be escheat to the State by the death of the owner, intestate and without leaving heirs, applies at once to the office ; and, upon his mere suggestion and application, a warrant is issued, with such specifications as to the cause of escheat, and the name, situation and quantity of the land, as the party is enabled or chooses to direct; in which it is obviously his concern to be as correct and as particular as he can, especially in regard to the description of the land. And at page 367, of the same book, in speaking of the facts stated in the application and warrant, it is said that they should state

"that the owner of the land died seized in fee, intestate, and without heirs." If these be facts that should be suggested as the foundation of the warrant, and should be stated on the face of it, as means of notice to all concerned, it is manifest that the proceedings in this case are very irregular, and such as ought not to be sanctioned. It is true, the Commissioner of the Land Office, in issuing the patent, does not conclude any question of right; but an escheat grant is *prima facie* evidence, and is available for that purpose until the contrary is proved. *Lee vs. Hoye*, 1 *Gill*, 201. And though it is not necessary or usual, according to the practice of the Land Office, to state on the face of the patent whose lands were escheated, or the facts or circumstances which show the lands to be escheatable, yet it by no means follows that those facts may be omitted in the proceedings upon which the patent is founded. They are required for a substantial purpose. It is to these facts, displayed of record, that the *prima facie* effect of the patent is attributed; and without them there is no sufficient notice furnished to those interested in resisting the issual of the patent. In the case of *Lee vs. Hoye*, 1 *Gill*, 201, in speaking of the effect of an escheat grant, the Court said: "Where a warrant regularly issued, has been executed by the proper officer, and a certificate returned, which has laid a sufficient time in the land office without caveat, to justify the emanation of a grant, it is but a fair, reasonable, *prima facie* presumption that the land taken up was escheatable, and that the title passed to the grantee." This presumption, therefore, rests upon the acquiescence of the public, and that acquiescence is shown by the omission to object to the patent for the required time after notice, furnished by the warrant and certificate returned to the office. *Goodwin vs. Caton*, 4 *Md. Ch. Dec.*, 160. But where the proceedings wholly fail to disclose the name of the owner of the land, who is supposed to have died seized in fee, intestate and

without heirs, it is clear, the ground of the *prima facie* presumption is seriously weakened. At any rate, the patent should not be issued in such case, upon the presumed acquiescence of the public, without better notice than the proceedings themselves afford.

But, apart from the objections we have stated to the proceedings, there is another reason why the patent should not be issued as the case now stands, and that is, that it appears from the statement of the commissioner of the land office that the land in question has been taken up as vacant by another person, and a patent issued to him by the State, as far back as the year 1828. Now, while it is very true, that land which has escheated can only be taken up under an escheat warrant, still, if there be no fraud or imposition practiced upon the State, and a party has purchased and paid for land supposed to be vacant, but which in fact came to the State by escheat, and the party receiving the grant has held and exercised acts of ownership over the land for a period to give him the protection of the Act of 1818, ch. 90, Code, Art. 57, sec. 9, he ought not to be disturbed, or have his title clouded or brought into question, by a subsequent grant issued to another person upon an escheat warrant. *Dorothy vs. Hillert*, 9 *Md.*, 570; *Jones vs. Bradley*, 4 *Md. Ch. Dec.*, 167. The commissioner of the land office has power and authority to hear and decree upon all disputes concerning the issuing of patents, and in all disputes that come before him he is clothed with power to decree thereon according to equity and good conscience, and the principles established in Courts of equity; Code, Art. 54, sec. 14; and in a case like the present, the party holding the former grant should be summoned in and given an opportunity of asserting his rights, as opposed to the claim of the party seeking the grant upon the escheat warrant; and thus, by deciding the matter at once, destroy the germ of an useless and vexatious litigation.

The order appealed from will be reversed, and the cause remanded, that the caveat may be sustained, and the warrant and certificate quashed.

*Order reversed, and
cause remanded.*

(Decided 15th June, 1877.)