# UNITED STATES FIDELITY & GUARANTY COMPANY ET AL., *v.* JOHN E. DEMPSTER.

*Escheat for Lack of Heirs—Burden of Proof—Evidence—Issue of Patent—Caveat—Devise—Bed of Street.*

A devise of land at the corner of two streets named carried the title to the center of the bed of the street in question, in so far as owned by testator.                    p. 239

The applicant for a patent, on the supposition of ownership in the state by virtue of an escheat, has the burden of proving the escheat, including the lack of heirs of a former owner, in so far as the escheat depends on such lack.          p. 239

The principle that an escheat grant is *prima facie* evidence of liability of the land to escheat at the time of the warrant, cannot be invoked on appeal in the original proceeding for the grant, if caveats were promptly filed.          p. 239

The *prima facie* value of a patent granted arises from an acquiescence of the public inferred from omission to object during the required time after notice furnished by the warrant and certificate returned to the Land Office.          p. 239

The ordinary presumption, rational as well as legal, is that every person has some relatives, and consequently some heirs, however remote.          pp. 239, 240

The fact that, at a time when aliens could not inherit real estate, in Maryland, a decedent's brother was an alien, does not relieve one, asserting an escheat for lack of heirs to such decedent, from the burden of producing some evidence to exclude the possible existence of more distant relatives, who were capable of inheriting.          p. 240

The failure of a testator to devise or bequeath any property to relatives who were capable heirs is not evidence that he had no such relatives.          p. 240

No inference against the existence of heirs to the owner of the bed of a street can be drawn from the failure, during a century, of any one to claim title to such bed, there being nothing, in such case, that heirs would ordinarily care to claim.          p. 240

*Decided May 5th, 1926.*

Appeal from the Commissioner of the Land Office.

Caveat by the United States Fidelity & Guaranty Company and the Mayor and City Council of Baltimore to the issue of patent on the application of John E. Dempster. From an order issuing the patent, the caveators appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*Allen A. Davis, Assistant City Solicitor,* with whom was *Philip B. Perlman, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore, appellant.

*Bartlett, Poe & Claggett,* submitting on brief, for United States Fidelity and Guaranty Company, appellant.

*John E. Dempster and Charles H. Doing,* submitting on brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appeal in this case is from the issue by the Land Office of a patent to the bed of Mercer Street in Baltimore City, extending from Calvert Street one half block west to Grant Street. The United States Fidelity & Guaranty Company has buildings on each side of the street at that point connected by a tunnel under the street surface, built by authority of the city, and the company and the city have joined as caveators and appellants.

The patent was granted upon the supposition that the land had escheated to the State upon the death of a former owner, George Salmon, in 1807, without having devised the property, and without heirs capable of inheriting. The record shows that, in 1759, John Mercer acquired title to lots 47 and 48, of Baltimore Town, lying on the west side of Calvert Street, and extending, together, from what is now Baltimore Street south to the water. He laid out the street in question through lot No. 48, and divided all the land abutting on the south side of it into smaller lots, and sold them. In the deeds of these smaller lots the land sold was described, in each instance, as lying on the south side of the street, and the title to the bed of the street in front of them, therefore, remained in Mercer. *Gump v. Sibley,* 79 Md. 167; *Rieman v. Baltimore Belt R. R. Co.,* 81 Md. 68. Mercer, dying in 1777, devised all his land at this place to his widow, Rebecca, during her life or until re-marriage, with remainder to a nephew of the testator, John

Mercer Porter.  Mercer's widow remarried with George Salmon, and purchased from John Mercer Porter the land remaining unsold from lots 47 and 48, which included the bed of Mercer Street, or Bank Street, as it was originally named, and the land abutting on the north side of it.  Rebecca Salmon caused the land to be settled to the use of herself and husband, George Salmon, and of the survivor, with power in the survivor to devise, and, in default of such devise then to the heirs of the survivor.  In the argument, mention was made of a deed from Rebecca Salmon and her husband, in 1783, of land sold on the north side of the street, fronting twenty feet on the western end of the portion of the street bed now claimed, and of another from George Salmon alone, in 1802, of a forty-four foot lot adjoining the former one; but these deeds were not included in the record, or covered by stipulation of the parties as required by the rules of court, and they are not properly before the court.  As we see the case, however, their omission is not of any consequence.

George Salmon survived his wife, and, dying in 1807, left a will, in which he first requested his executor to inquire whether a brother, William Salmon of Belfast, Ireland, had survived the testator, and if he had survived to remit him two hundred pounds sterling.  Then, after legacies of money to his pastor and his physician, he devised to George Salmon Bourne and William Taylor Bourne, sons of Rebecca M. Bourne, deceased, niece of his late wife, his "house and lot at the corner of Calvert and Bank Streets," "to take place after the decease of Hannah Meredith, also niece to my late wife and sister to the above mentioned Rebecca M. Bourne." To Hannah Meredith, he bequeathed all his personal property, and other real property.  Except for the bequests made to his brother in Ireland, his parson and his physician, the only legatees were his wife's relatives.  There was no residuary clause.  And from the provisions of this will, it seems to follow that the southern half of the bed of the street, owned by George Salmon as survivor of his wife, was not disposed of by the will, and vested in the heirs of Salmon, if he had any, or escheated to the State.  But as to the north half of

the street in front of the lot at the corner of Calvert and Bank Streets, devised to George Salmon Bourne and William Taylor Bourne, it seems equally clear that the testator did devise this by the will, as the description, "at the corner of Calvert and Bank Streets," carried the title of this abutting lot out to the center of the bed of the street. *Gump v. Sibley,* 79 Md. 165, 167. The inclusion of this latter portion as if escheated to the State for want of any devise might, alone, require a reversal of the grant, but there is a more sweeping objection on which we think the decision should be rested. In our opinion the evidence is not sufficient to support a finding of an escheat of any of the street bed, on the supposition that George Salmon died without heirs who might inherit it.

The parties agree that the will alone contains all available evidence on the possibility of heirs. And we must test this evidence by the rule that the applicant for a patent, on the supposition of ownership in the State, by virtue of an escheat, has upon him the burden of proving the escheat, in this case, of proving the lack of heirs. See authorities collected in *Ann. Cas.* 1913 E, 384. In the argument on appeal some dependence was placed by the applicant, now appellee, on the principle frequently announced in ejectment suits brought after patents had issued, that an escheat grant is *prima facie* evidence of liability of the land to escheat at the time of the warrant. *Hall v. Gittings,* 2 H. & J. 112, 126; *Lee v. Hoye,* 1 Gill. 201; *Hammond v. Inloes,* 4 Md. 138, 171; *Guyer v. Smith,* 22 Md. 239, 248. But, if this principle can ever be invoked on appeal in the original proceeding for the grant, it could have no application to the facts of this case, for the *prima facie* value of a patent granted arises from an acquiescence of the public inferred from omission to object during the required time after notice furnished by the warrant and certificate returned to the Land Office (*Armstrong v. Bittinger,* 47 Md. 103, 110), and there was no such omission or acquiescence here. The caveats were promptly filed. See *Pelerkin v. Inloes,* 4 Md. 175, 188. We begin here, rather, with a presumption that George Salmon did leave heirs. The ordinary rational as well as legal presumption is that

every person must have some relatives, and consequently some heirs, however remote. *People v. Fulton Fire Ins. Cov,* 25 Wend. 218; note Ann. Cas. 1913 E, 383. In 1807 an alien could not inherit real estate in Maryland (see Act 1825, ch. 66; Act 1874, ch. 354), and, consequently, the testator's brother, William Salmon, if he was then living, was not capable of inheriting, and his surviving would not have prevented an escheat. But, of course, George Salmon's heirs were not restricted to such close relatives as brothers; they might include all capable persons in the many classes enumerated in the Act to Direct Descents then in force (Act 1786, ch. 45; Act 1799, ch. 49; Act 1802, ch. 94), some of them very remote. Any persons not aliens, or of illegitimate birth, within any of these classes, were heirs, and the applicant for a patent on the ground of escheat must produce some evidence to exclude the possibility of any such heirs, so capable of inheriting. *People v. Fulton Fire Ins. Co., supra;* Ann. Cas. 1913 E, 383. To meet this burden here, the applicant cannot now present any witnesses who knew the deceased or his affairs. *Jackson v. Etz,* 5 Cow. (N. Y.) 314. He can have no direct testimony of the lack of capable heirs. He can rely only on the failure of the deceased to devise or bequeath any of his property to such persons; and that may just as well have been due to ignorance of the existence of capable heirs who did exist, or to a lack of any desire to leave them property. No inference against the existence of heirs could be drawn from the failure of any to come forward during the last century and claim title to the bed of the street, for in title to the mere bed subject to the street easement there was nothing that heirs would ordinarily care to claim. *Peterkin v. Inloes,* 4 Md. 175, 187.

Much of the argument was devoted to a question whether the Land Office should issue a patent to land which is covered by a city street when it can serve no useful purpose of the applicant, but we find it unnecessary to consider that question. See *Armstrong v. Bittinger, supra,* p. 109, and *Baltimore v. McKim,* 3 Bland, 453, 474.

*Order reversed with costs to the appellee.*