ERNEST J. GORE et al. *v.* CLARENCE T. TODD et al.

*Patent for Land—Caveat Against Issue—Title Not in State.*

A patent for part of an island was properly refused when the evidence showed that a patent had previously been issued for such part and that the title had never escheated to the State.                                   p. 289

That, on an application for a patent to all that part of an island not included in a certain deed of fifty-three acres of the island, the surveyor to whom a warrant of survey issued, not knowing where the fifty-three acres lay, included the whole island in his reported survey, did not affect the title to such fifty-three acres, held under a patent previously issued, or enable the State to issue a patent for the whole island.    p. 289

Evidence that a certain island had been in the possession and control of appellees, of their father, and of their grandfather, for more than twenty years, the appellees having succeeded as heirs and devisees to the title accruing by adverse user, *held* sufficient to establish title by adverse possession as regards a portion of the island not included in deeds by which a described portion was conveyed to the appellees and their predecessors in interest.                       pp. 289, 290

The fact that the appellees paid no taxes on that portion of the island not included in their record title did not militate against their claim of title by prescription to that portion, it not being assessed for taxes.　　　　　　　　　　　p. 290

*Decided April 6th, 1926.*

Appeal from the Commissioner of the Land Office.

Application by Ernest J. Gore and Elon Jones for a survey and grant of certain land alleged to be vacant, to which a caveat was filed by Clarence T. Todd, Ruth E. Moore, and Eva May Todd. From an order sustaining the caveat and refusing a patent, the applicants appeal. Affirmed.

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*J. Watson Thompson* and *V. Calvin Trice,* for the appellants.

*Emerson C. Harrington, Jr.,* with whom were *Harrington & Harrington* on the brief, for the appellees.

Urner, J., delivered the opinion of the Court.

The appellants filed an application with the Commissioner of the Land Office for a survey and grant of certain land which they alleged to be vacant and described as "all that part of an island, called 'Middle Island' or 'Adams Island,' which is not included within the deed from Clarence T. Todd and wife to Ruth E. Moore, dated the 27th day of September, 1924, and recorded in Liber J. F .D. No. 15, page 325, one of the land records of Dorchester County. Said island lies between the Chesapeake Bay on the west and Holland Straits on the east, and lies immediately south of the west end of Billy's Island and immediately north of the north end of Holland's Island." A special warrant was issued out of the Land Office directing the County Surveyor of Dor-

chester County to survey the land mentioned in the application. The certificate and plat returned by the surveyor to the Land Office show that he included in his survey the whole of Middle or Adams Island, containing about 185 acres of land. In a postscript to his certificate the surveyor stated: "Not knowing where 'the Middle Island' 53¼ acres lay at, I have not subtracted it from the whole." The land which he was unable to identify was that conveyed by the deed from Clarence T. Todd and wife to Ruth E. Moore, to which the special warrant and the application for a patent had referred. That deed conveyed an undivided one-third interest in a tract of land in Dorchester County known as "Middle Island" or "Adams Island," "fifty (50) acres of land, more or less," which had been devised to the grantor and his mother and sister, in equal shares, by the will of his father, George T. Todd, who had acquired it in 1912 by deed from T. Sangston Insley, trustee, appointed by decree to sell and convey the real estate of George Todd, deceased. In 1866 the same land had been conveyed by William Price and others to Ephraim Price and George Todd, the latter being the father of George T. Todd, and in 1897 Ephraim Price conveyed his interest to George Todd by a deed which described the land as being a tract "known as the 'Middle Island,' situated and lying in Dorchester County and running the several courses agreeable to patent or certificate containing fifty-two and one quarter acres, more or less," and "commonly called 'Adam's Island.'" As described in the deed of 1866 from William Price and others, the tract thereby conveyed was "known as the Middle Island situated and lying in Dorchester County to the north end of Cotney's Island, and running the several courses agreeable to patent or certificate containing fifty-two and one quarter acres, more or less." There is evidence in the record that Cotney's Island was the name by which Holland's Island was formerly known.

In 1795 William Crosswell conveyed to William Price a tract of land "called the Middle Island, situate, lying and

being in Dorchester County and on the north end of Cotney's Island, Beginning at a marked Cedar Post, standing on the North end of the aforesaid Island, then runs the several courses agreeable to Patent or Certificate, containing fifty-three acres and one quarter of an acre of Land, more or less, together with all Lands, Houses, Orchards, Gardains, Proffits, Advantages, and appurtenances thereto belonging or in any-wise appertaining." By a patent issued in 1793 the State granted to William Crosswell the tract of "land called the Middle Island, situate, lying and being in Dorchester County on the north end of the aforesaid island called Cotney's Island or otherwise called Hall's Hammock. Beginning for the outlines of the survey at a marked cedar post situate upon the North end of the aforesaid Island from thence runs the following courses viz: South seventy-nine degrees West twelve perches, South eight degrees West one hundred and ten perches, South thirty degrees East sixty-four perches, South nine degrees East one hundred and ten perches, South seventy-seven degrees & one quarter East thirty-two perches, then with a straight line to the first beginning. Containing fifty-three acres and one quarter of an acre according to the Certificate of Survey thereof taken and returned into the Land Office bearing date the tenth day of October seventeen hundred and ninety-two, and there remaining: Together with all rights, profits, benefits, and privileges thereunto belonging."

As holders of the record title to fifty-three and one quarter acres of Adams Island and as claimants of the title to the remainder of the island by adverse possession, the appellees filed a caveat against the issuance of a patent to the appellants for any part of the island as a vacant area within the purview of the law. Evidence was produced by the parties upon the issue thus raised, and upon final hearing the caveat was sustained and the patent applied for was refused. The appeal is from the order of the Land Commissioner to that effect.

The record convinces us that the tract of land containing

53¼ acres granted to William Crosswell by patent under the name of Middle Island in 1793, and described in the various deeds upon which the appellees rely, is a part of the island, now bearing the name of Adams, to which the appellants' petition for a patent applies. While the action of the surrounding waters has so changed the shores of the island that it appears to be impossible to locate satisfactorily the lines of the Crosswell patent, it is evident that Adams Island includes the land which that patent describes. It has been proved that successive grantees of the patented tract have used the island for various proprietary purposes, and that William Price, one of the earliest owners of the land described in the patent, lived on the island in a house erected upon foundations which still exist. Moreover, the fact that the appellees have a record title to a part of Adams Island was recognized by the appellants when they applied for a grant from the State of that part of the island which was not embraced within the lines of the latest deed to which we have referred. The inability of the County Surveyor to locate the lines of the 53¼ acres tract, and his consequent omission to subtract it from the whole island area embraced in his reported survey, did not affect the title to the part of the island which had been transmitted to the appellees by deed and devise. A patent could not have been properly issued to the appellants for the land described in the surveyor's certificate, because it included a tract for which a patent had already been issued, and the title to which was not shown to have escheated subsequently to the State. *Smith v. Baker,* 4 Md. Ch. 29; *Twigg v. Jacobs,* 4 Md. Ch. 541; *Lee v. Hoye,* 1 Gill, 188.

In regard to the land not subject to the record title of the appellees, the evidence in the case sufficiently supports their claim of title by adverse possession. The whole of Adams Island is proved to have been under the possessory control of the appellees, Clarence T. Todd and Eva May Todd, and of their father, George T. Todd, and their grandfather, George Todd, for more than twenty years before the appel-

lants filed their pending application.   As the descendants, heirs and devisees of the two preceding purchasers, the appellees just referred to have succeeded to the accruing title by adverse user which the consecutive exercise, by their predecessors and themselves, of dominion over the land has created. The acquisition and transmission of that title has been independent of the deeds by which a described portion of the island was conveyed.   The possession of the island by two of the appellees and their ancestors has been appropriate to its condition.   It is largely composed of marsh land, and was used by George Todd principally for pasturing his sheep, hogs and cattle.   Its shores afford attractive positions from which to shoot water fowl, but the right of George Todd and his descendants and successors in title to give or refuse permission to use the island for that purpose is proved to have been consistently exercised and generally conceded and respected.   They used it as proprietors for gunning, trapping and other purposes for which it was available.   Gunners sometimes visited the island in ignorance or disregard of the ownership to which the appellees claim to have succeeded, but such incursions were not committed in the assertion or denial of any title.   Notices against trespassing were posted periodically at various points on the island by members of the Todd family through whom the title was transmitted by devise or inheritance, and it was subject to a lease executed by one of the appellees when the petition of the appellants for a patent was filed.   Since only the portion of the island held by the appellees or their predecessors under a record title was assessed for taxes, the fact that they did not pay any taxes on the remainder of the land does not militate against their asserted title to that portion of it by prescription.

While some of the testimony in the record was inadmissible, there is sufficient competent proof to sustain the appellees' claim of title to the island in its entirety.   The cases of *Bloodsworth v. Murray,* 138 Md. 631, and *Tyler v. Cedar Island Club,* 143 Md. 214, support this conclusion.

*Order affirmed, with costs.*